[No. A063376. First Dist., Div. Four. Oct. 16, 1995.]

HERIBERTO FUENTES, JR., et al., Plaintiffs and Appellants, v.
VIRLEE BERRY et al., Defendants and Respondents.

**COUNSEL**

Hayes & Mitchell, Daniel L. Mitchell and Debra A. Hayes for Plaintiffs and Appellants.

Ann Brick, Edward M. Chen, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Barbara A. Winters and Michael H. Page for Defendants and Respondents.

**OPINION**

**REARDON, J.**—Appellants Heriberto Fuentes, Jr., Robert R. Villa, and Ronald R. Jones, police officers employed by the City of Alameda (appellants or the officers), brought an action for malicious institution of a civil proceeding (commonly referred to as "malicious prosecution") against respondents Virlee Berry (Berry), her husband Edward Berry, and her sister

Betty Williams. Berry was the sole plaintiff in the underlying action, a federal civil rights suit.[1]

In March 1990, the superior court entered a summary judgment against the officers on the ground that the federal suit had not been terminated in their favor. In January 1991, we concluded that a triable issue existed as to whether the termination of the federal suit was in fact the result of a settlement or was instead a voluntary dismissal with prejudice reflecting on the merits of the case. We reversed the summary judgment. (*Fuentes* v. *Berry* (Jan. 22, 1991) A049265 [nonpub. opn.].)

On remand, Berry's attorneys conducted discovery directed to the issue of whether or not the federal suit was terminated in favor of the officers. In June 1993, they filed a second motion for summary judgment in the superior court, claiming that it could no longer genuinely be disputed that (1) the underlying federal action was terminated as a result of a settlement, a condition of which required the officers be dismissed from the suit; and (2) the officers ratified the settlement of the underlying action both by not taking some action to set aside their dismissals and by accepting the benefits of the dismissals. In support of this second motion for summary judgment, Berry's attorneys cited *Villa* v. *Cole* (1992) 4 Cal.App.4th 1327 [6 Cal.Rptr.2d 644], a case very similar to this one filed in March 1992 by Division Three of this court.[2]

In opposition to the motion for summary judgment, the officers argued that (1) this court's first opinion filed in January 1991 is the "law of the case" and should be followed by the trial court; (2) in any event, *Villa* is distinguishable on its facts; and (3) there remains a triable issue of a material fact relating to the issue of favorable termination.

In August 1993, the trial court granted the motion for summary judgment, finding that there was no triable issue of fact with respect to the issue of

---

[1]A similar complaint was filed in the Alameda County Superior Court. No significant proceedings took place in the state trial court; the focus of the litigation was in the federal court.

[2]In fact, Alameda Police Officer Robert R. Villa is a plaintiff-appellant in each case. Rufus Cole, the defendant-respondent in that case, was the attorney representing Mrs. Berry in the underlying action here. In each case, Cole filed a civil rights action against the City of Alameda and one or more of its police officers in federal court, which action was later dismissed. In each, the officer(s) filed a malicious prosecution action in state court. In each, the superior court granted summary judgment to the defendants on the ground that the underlying federal action was not terminated in favor of the individual police officer(s). Issues we must decide include whether the circumstances surrounding the dismissal of the federal action in each case are distinguishable and, if so, the legal significance of any such distinctions.

favorable termination. The court explained: "It cannot genuinely be disputed that the dismissal of Plaintiffs in the underlying federal and state actions was a condition of the settlement among Virlee Berry and the City of Alameda and its Police Chief, and as such this action is barred pursuant to the rule of *Villa* v. *Cole*, 4 Cal. App. 4th 1327 (1992). Alternatively, it cannot genuinely be undisputed [*sic*] that Plaintiffs ratified the settlement by accepting benefits of the dismissals and failing to take any action to set them aside. For this alternate reason as well, this action is barred pursuant to the rule of *Villa* v. *Cole*. [¶] For the foregoing reasons, Defendants' Motion is granted as to the entire Complaint and with respect to all Plaintiffs."

The officers appealed. Once again, we reverse the summary judgment.

## I. STANDARD OF REVIEW

A motion for summary judgment must be granted by the trial court if all the affidavits, declarations, and other supporting papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Under the statute as applicable in 1993 when this summary judgment motion was filed and granted, a defendant who moved for summary judgment could meet his or her initial burden of showing that a cause of action had no merit by showing that one or more elements of the cause of action, even if not separately pleaded, could not be established or that there was a complete defense to that cause of action. Once the defendant made that showing, the burden shifted to the plaintiff to show that a triable issue of one or more material facts existed as to that cause of action. (Code Civ. Proc., § 437c, former subd. (n)(2) [now subd. (o)(2)]; see Stats. 1992, ch. 1348, § 1; see *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768].) ▮ An appellate court determines de novo whether a genuine issue of material facts exists and the moving party is entitled to summary judgment as a matter of law. (*Jambazian* v. *Borden, supra,* at p. 844; *Wilson* v. *Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

Even if we assume that Berry has initially shown that an element of the cause of action cannot be established, we conclude that a triable issue as to a material fact continues to exist concerning whether the termination of the federal suit was the result of a settlement or was instead a voluntary dismissal reflecting on the merits of the case.

## II. Facts[3]

### A. *Background*

This litigation had its origin in a traffic encounter involving Berry and the City of Alameda police in March 1986. She apparently disregarded directions given by traffic control officers, drove off, and was later stopped and taken into custody by appellants. Berry was initially charged with resisting arrest and three Vehicle Code violations. On February 13, 1987, she entered a plea of no contest to unlawful flight from a peace officer. (Veh. Code, § 2800.1.)

### B. *Civil Rights Proceedings*

Four days after her no contest plea in state court, Berry filed a complaint in the United States District Court of the Northern District of California (Berry v. City of Alameda (1987) N.D.Cal., No. C 87 0606) against the City of Alameda, its police chief, and the three officers herein, alleging four causes of action in violation of the federal civil rights laws (42 U.S.C. §§ 1981, 1983) and four state tort causes of action. The essence of her complaint was that the officers pulled her vehicle over and, without justification, forcefully removed her from the vehicle and beat her without provocation.

Berry was represented in the federal proceedings by Attorney Rufus L. Cole. The city, its police chief and the three officers were represented by City Attorney Carter J. Stroud. Attorney Daniel L. Mitchell was also associated as counsel by the city attorney to provide representation in the case.

As the civil rights action moved toward trial, Cole and Stroud corresponded on the possibilities of settlement. This correspondence reveals the officers' reluctance to fully settle the matter. For example, on June 21, 1988, Stroud suggested that Cole delete certain language from a release form prepared by Cole which would have precluded a later malicious institution of a civil proceeding lawsuit by the officers. Initially, Stroud wrote Cole that the case "can be settled if the officers are not required to sign anything." But a few days later, on June 28, Stroud wrote: "The officers have now refused even to consent to a settlement if there is no requirement to sign releases. No settlement is now possible."

Nevertheless, on November 1, 1988, the day set for trial, Attorneys Stroud and Cole met in chambers with the federal court judge to set forth the terms

---

[3]This factual statement is based on that in our original opinion, filed January 22, 1991. (*Fuentes* v. *Berry, supra,* A049265.)

of a settlement they had reached. Berry and her husband sat in on the latter portions of the in-chambers proceeding. The three officers were not present.[4] Announcing himself as appearing "for defendants," City Attorney Stroud proposed to "put the settlement on the record." During discussions between court and counsel, the attorneys revealed that no private written settlement agreement existed between the parties. Instead, the attorneys proposed that they state their understanding for the record, that there be dismissals with prejudice, but that no judgment be entered in the court's record.[5]

Stating his understanding for the record, City Attorney Stroud said: "The three officers would be dismissed with prejudice. They're not willing to sign releases or any kind of agreement. They will just be out of the case. [¶] The city, in return for its release with prejudice, would pay to the plaintiff $15,000. That would settle the 1981 [civil rights] action, which is still pending against the city and would preclude an appeal by defendants on the summary judgment granted by this court." Stroud also mentioned that the officers were adamant that the terms of the settlement not be discussed with the press, as "they've really had quite enough of having their names in the paper on this basis. [¶] So that—those are the terms."

Berry's attorney acknowledged that "the agreement as stated by Mr. Stroud basically reflects my understanding of the agreement." He added that Berry was present in court as the sole plaintiff and that if she had any questions, she could address the court, if she desired.

When the court asked Berry if she understood the terms of the settlement agreement, she raised a question about what Mr. Stroud had said in relation to the release. The court explained that Berry was to "sign and deliver to the City the normal type of release releasing all claims that you now have against the City for any matters that may have arisen up to now from the beginning of time."

The following exchange then occurred: "Mrs. Berry: Okay. Does this mean that the police department can now sue me? [¶] The Court: It would not affect that in any way whatsoever. [¶] Mrs. Berry: So they could do that. [¶] The Court: Well, unless there's some agreement to the contrary. [¶] Do you anticipate anyone in the police department suing you? [¶] Mrs. Berry: I don't know. I'm just asking a question . . . . [¶] Mrs. Berry: —since someone had mentioned something about malicious prosecution or something."

---

[4]When the court asked Mr. Stroud if he wanted anyone to sit in, Stroud replied: "No, that's fine. Once the dismissals are filed, why, we're clear."

[5]When the court commented that the better way of reflecting a settlement would be to have a private settlement agreement followed by a dismissal of the case with prejudice, Mr. Stroud commented: "Usually we're worried about the parties changing their minds or whatnot. It helps if we tell our clients that it's a done deal."

When Berry's husband interjected that they had been advised by her attorney that it was possible that the police officers could sue for malicious prosecution, the federal judge said it was only necessary that Mrs. Berry understand the agreement. After Mrs. Berry acknowledged that she understood the agreement fully, the court asked her: ". . . Do you agree to it without any provision in it that relates to the police officers? . . . [¶] The Court: You do agree with the settlement agreement as expressed and without any provision in it limiting the rights of the police officers. [¶] Mrs. Berry: I have to agree to that. [¶] The Court: Beg pardon? [¶] Mrs. Berry: I have to agree to that. [¶] The Court: No, you don't have to. Do you agree to it freely and voluntarily? [¶] Mrs. Berry: Yes, I do agree to it. [¶] The Court: All right. Thank you."

In a follow-up letter to Cole on November 18, 1988, transmitting a "Release of All Claims" against the city and its police chief to be signed by Berry, Stroud wrote: "Enclosed is the release required, which together with the dismissals with prejudice *for the City and the Chief* and the waiver of an appeal to the summary judgment is required for payment of the agreed $15,000 to your client. This is all covered by the release *as the settlement between those parties.* [¶] *The officers only require dismissals with prejudice since they are not participating in the above settlement.*" (Italics added.) Berry signed and returned the release form.

Several months later, on April 19, 1989, two separate documents entitled "Stipulation and Order for Dismissal With Prejudice" were filed with the federal court. One read: "The plaintiff, VIRLEE BERRY, and defendants, CITY OF ALAMEDA AND [POLICE CHIEF] ROBERT SHIELLS, *having fully settled and resolved this matter*, plaintiff hereby dismisses with prejudice this action against the said defendants." (Italics added.) This document was signed by the City Manager of Alameda, the police chief, and Berry, was approved as to form by Attorneys Cole and Mitchell, and was signed as an order by the federal judge. The other form read: "Plaintiff VIRLEE BERRY hereby dismisses with prejudice her action against defendants Ronald Jones, Heriberto Fuentes and Robert Villa, each party to bear its own costs." No mention was made of a settlement. The only party to sign this form was the plaintiff, Virlee Berry.

The officers filed this action in July 1989.

### III. DISCUSSION

■ To establish a cause of action for malicious institution of a civil proceeding, a plaintiff must demonstrate that the prior action was commenced by or at the direction of the defendant and (1) was pursued to a legal

termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498]; *Pender* v. *Radin* (1994) 23 Cal.App.4th 1807, 1813 [29 Cal.Rptr.2d 36]; *Villa* v. *Cole, supra,* 4 Cal.App.4th 1327, 1335.)

In this case, only the first element relating to whether the prior action was terminated in the officers' favor is at issue. In that regard, a dismissal resulting from a *settlement* generally does not constitute a favorable termination. (*Haight* v. *Handweiler* (1988) 199 Cal.App.3d 85, 88 [244 Cal.Rptr. 488].) "In such a case the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. [Citation.]" (*Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827, fn. 4 [145 Cal.Rptr. 829]; see also *Pender* v. *Radin, supra,* 23 Cal.App.4th at p. 1814.)

On the other hand, a voluntary dismissal, even one without prejudice, may be a favorable termination which will support an action for malicious prosecution. (*MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 289 [79 Cal.Rptr. 707].) "In most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action; the same is true of a dismissal for failure to prosecute. [Citations.]" (*Villa* v. *Cole, supra,* 4 Cal.App.4th at p. 1335.)

Where a proceeding is terminated other than on the merits, the reasons underlying the termination must be examined to see if it reflects the opinion of the court or the prosecuting party that the action would not succeed. (*Haight* v. *Handweiler, supra,* 199 Cal.App.3d at p. 88.) If a conflict arises as to the circumstances explaining a failure to prosecute an action further, the determination of the reasons underlying the dismissal is a question of fact. (*Id.* at p. 89; *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 185 [156 Cal.Rptr. 745]; *Minasian* v. *Sapse, supra,* 80 Cal.App.3d at p. 828.)

In the first appeal in this case, each side cited *Haight* v. *Handweiler, supra,* 199 Cal.App.3d at page 85 as the case then most closely in point to this one. Berry cited that portion of the *Haight* opinion which stated that the dismissal of the underlying action against a nonconsenting defendant by the plaintiff was a necessary condition of a settlement with the other defendant.[6] The officers sought to distinguish *Haight*.

In our earlier opinion, we pointed out that each side overlooked a critical procedural difference between *Haight* and this case. The appeal in *Haight*

---

[6]"Such a termination does not necessarily reflect [the plaintiff's] opinion that his action against [the nonconsenting defendant] lacked merit and thus does not qualify as a favorable

followed a court trial on the issue of favorable termination in which the trial court had made factual determinations as to the reasons underlying the dismissal of the action against Haight. In doing so, it found that the plaintiff had dismissed Haight as a necessary condition of effectuating the settlement. The reviewing court found substantial evidence to support that factual determination. (See *Haight* v. *Handweiler, supra,* 199 Cal.App.3d at p. 89.) As our case involved an appeal from the granting of a summary judgment, any factual disputes were yet to be resolved. We therefore reversed the summary judgment.

On remand, Berry's attorneys conducted further discovery, directed to the issue of favorable termination. This included a deposition of City Attorney Stroud, during which he testified that he had been counsel of record for each defendant in the underlying federal action, including the officers. Because the city had a duty to indemnify the officers for any liability they might incur during the course of their duties, Stroud maintained that a dismissal of the case against the officers was a necessary condition of any settlement between Berry and the other defendants. Stroud testified that none of the officers objected to having his case dismissed.

Attorney Daniel L. Mitchell, who was retained by the City of Alameda to act as cocounsel for all defendants, including the officers, was also deposed. In contrast to Stroud, Mitchell testified that while there was a settlement between Berry and the city and its police chief, "[t]here was no settlement on behalf of the officers."

Berry based her second motion for summary judgment on the contentions that, as a matter of law, (1) the dismissal of the officers was a necessary condition of the settlement between Berry and the City of Alameda, and (2) the officers ratified the settlement of the federal action by accepting its benefits and failing to attempt to set aside the dismissals. In doing so, she relied heavily on the intervening *Villa* case.

In *Villa,* Division Three held that ". . . even where a defendant does not agree to a settlement made on his behalf, his or her dismissal from the lawsuit pursuant to that settlement will not be viewed as a favorable termination as long as it was a necessary condition to achievement of the overall settlement. Such a dismissal is not considered unilateral because it was required by the terms of a settlement agreement, and it will act as a bar to a later malicious prosecution action by the nonsettling defendant. (*Haight* v. *Handweiler, supra,* 199 Cal.App.3d at pp. 88-89.)" (*Villa* v. *Cole, supra,* 4 Cal.App.4th at p. 1336.)

termination in the context of a malicious prosecution action." (*Haight* v. *Handweiler, supra,* 199 Cal.App.3d at p. 89.)

As we read *Villa*, Officer Villa was present in the courtroom with the attorneys for each side when the settlement agreement was announced to the trial court. Counsel for the city stated that he appeared "on behalf of all defendants" and Villa acknowledged that that was correct. After attorneys for each side accepted the settlement terms on behalf of their respective clients, the federal judge ruled that the city had " 'provided the representation for Officer Villa, the City has agreed as attorney for Officer Villa to this disposition, and the City takes the position that it has the right to settle on his behalf even though he does not join in the motion . . . .' " (*Villa v. Cole, supra*, 4 Cal.App.4th at p. 1333.) The federal judge entered an order dismissing the action "with prejudice, pursuant to the stipulation 'entered into by the parties by and through their counsel of record . . . .' " (*Ibid.*)

In its opinion, the court stated that appellant Villa had conceded that the terms of the settlement between the city and the plaintiff in the underlying action required the dismissal of all of the defendants in that action, including appellant Villa. The court stated that in short, the plaintiff dismissed appellant Villa from the civil rights lawsuit "because it was necessary to effect the settlement with the City." (*Villa v. Cole, supra*, 4 Cal.App.4th at p. 1336.) On that basis, the court held that the termination did not necessarily reflect the plaintiff's opinion that his civil rights action against Villa lacked merit, and thus did not qualify as a favorable termination for purposes of a malicious prosecution action, citing *Haight*. (*Ibid.*)

In the more recent case of *Pender v. Radin, supra*, 23 Cal.App.4th 1807, the settlement agreement, like that in *Villa*, was negotiated by an attorney acting with the full authority of the Penders. Further, the agreement provided that the plaintiff therein was to dismiss the underlying action "in its entirety as to all defendants w[ith] prejudice. . . ." (*Id.* at pp. 1810, 1814-1815.) There was no triable issue of fact as to whether the Penders were a party to the settlement agreement. (*Id.* at p. 1814.)

In contrast to *Villa* and *Pender*, we believe that a triable issue continues to exist in this case. Unlike in *Villa,* the officers in this case have never conceded that the terms of the settlement between Berry and the other defendants in the federal proceeding required the dismissal of all of the defendants, including themselves. During the period leading up to the settlement between Berry and the other defendants, Stroud wrote to Berry's attorney that the officers were refusing to consent to a settlement, even if they were not required to sign releases: "No settlement is now possible." When the eventual settlement was announced at a proceeding held in chambers in the federal court, the officers in this case were not present. When City Attorney Stroud announced the terms of the settlement, he stated

at the outset, "The three officers would be dismissed with prejudice. They're not willing to sign releases or any kind of agreement. They will just be out of the case." Berry's attorney acknowledged that "the agreement as stated by Mr. Stroud basically reflects my understanding of the agreement." He added that if Berry had any questions, she could address the court, if she desired.

Berry asked the court if the settlement agreement would have any effect on the possibility she might be sued by the police officers for malicious prosecution. The court indicated that the settlement "would not affect that in any way whatsoever. [¶] . . . [¶] . . . [U]nless there's some agreement to the contrary." When asked if she agreed with the settlement agreement "as expressed and without any provision in it limiting the rights of the police officers," Mrs. Berry replied that she did.

While Berry cites to correspondence which might suggest to the contrary, there is also correspondence in the record which continued to draw distinctions between the settlement with the city and its police chief and the agreement reached with the three officers. For example, on November 18, 1988, Stroud concluded one negotiation letter by stating: "The officers only require dismissals with prejudice since they are not participating in the above settlement."

Ultimately, unlike in any case cited by Berry, the federal judge signed two separate orders to bring the federal proceedings to a close. In one, signed by Berry, the city manager and Police Chief Robert Shiells, it was stated that "defendants, CITY OF ALAMEDA AND ROBERT SHIELLS, having fully settled and resolved this matter, plaintiff hereby dismisses with prejudice this action against the said defendants." The other order read, simply: "Plaintiff VIRLEE BERRY hereby dismisses with prejudice her action against defendants Ronald Jones, Heriberto Fuentes and Robert Villa, each party to bear its own costs." No mention was made of a settlement. The only party to sign this form was the plaintiff, Virlee Berry.

Construing Berry's supporting documents strictly, as we must, and construing the officers' supporting documents liberally, we believe the trial court erred when it held that there was no genuine dispute that the dismissal of the officers in the underlying action was a condition of the settlement between Berry and the city and its police chief. Moreover, a factual dispute exists as to whether the officers failed to take any action to avoid being made necessary parties to the settlement with the city and police chief. If there is a conflict in the circumstances explaining the dismissal of the case against the officers, the trier of fact should decide that conflict. (*Weaver* v. *Superior Court, supra*, 95 Cal.App.3d at p. 185.)

## IV. Conclusion

The summary judgment is reversed. Appellants to recover the costs of appeal.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied November 2, 1995, and appellants' petition for review by the Supreme Court was denied January 24, 1996. Mosk, J., was of the opinion that the petition should be granted.