[No. D019965. Fourth Dist., Div. One. Feb. 14, 1996.]

MICHAEL D. DALANY, Plaintiff and Appellant, v.
AMERICAN PACIFIC HOLDING CORPORATION et al., Defendants
and Respondents.

**COUNSEL**

John Forest Hilbert for Plaintiff and Appellant.

Steinberg & Goldstein, Alex Steinberg, Douglas B. Foster, Procopio, Cory, Hargreaves & Savitch, David A. Niddrie and Gerald P. Kennedy for Defendants and Respondents.

OPINION

BENKE, Acting P. J.—In this case we find a malicious prosecution action cannot be maintained where, following lengthy negotiations, a stipulated judgment is entered in favor of one of the parties.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Case*

In 1990 plaintiff and appellant Michael D. Dalany was president, a director, a shareholder and a creditor of defendant and respondent American Pacific Holding Corporation (APHC) and its related entities.[1] In the spring of 1990 the other directors of APHC agreed to sell their shares to Frank J. Domingues. Rather than sell his shares to Domingues, Dalany resigned as an officer and director of the corporation. Following Dalany's departure, defendant and respondent Donald L. Poindexter became president of APHC.

On May 1, 1990, Dalany filed a complaint to collect $165,000 in loans he had advanced to the corporation. Dalany's complaint included claims against Poindexter.

In response to Dalany's complaint, the corporation filed an answer raising a number of affirmative defenses and a cross-complaint in which it alleged Dalany had been guilty of various breaches of his fiduciary duty to the corporation. In May 1991 the trial court denied Dalany's motion for summary adjudication with respect to his claims for affirmative relief. The trial court granted Dalany's motion with respect to some, but not all, of the claims asserted by APHC.

Following disposition of the motion for summary judgment, the parties pursued settlement of Dalany's action as well as separate actions brought against APHC by Karen Hawkesworth and others. Dalany and Hawkesworth were represented by the same counsel.

Negotiations between Dalany and APHC took place between June 4, 1991, and September 25, 1991. During the course of those negotiations, APHC's in-house counsel explained to the parties that any funds for settlement of the claims against the corporation would have to come from the

---

[1]One of those related entities was defendant and respondent American Pacific Properties. Unless otherwise indicated, all references to APHC include American Pacific Properties.

corporation's attempt to refinance corporate property and that the refinancing could not proceed while the claims were pending.

On August 2, 1991, Dalany and APHC executed two documents entitled "Stipulation for Entry of Stipulated Judgment" and "Judgment on Stipulation for Entry of Judgment." The stipulation provided that a judgment in favor of Dalany in the amount of $180,000 would be entered but that Dalany would file a satisfaction of judgment if he were paid $105,000 by September 3, 1991. The stipulation and judgment further provided APHC would take nothing by way of its cross-complaint against Dalany.

APHC paid Dalany the $105,000 required by the stipulation and Dalany delivered a satisfaction of judgment to APHC on September 25, 1991.

### B.  *Malicious Prosecution Action*

On August 2, 1992, one year after execution of the stipulation and judgment, Dalany filed a malicious prosecution action against APHC, Poindexter and APHC's attorney in the prior action, James Marinos. Dalany alleged they had caused APHC's cross-complaint in the prior action to be filed without probable cause, that they acted with malice, that the cross-complaint had been resolved on the merits and that Dalany had suffered damage as a result. In addition to his malicious prosecution cause of action, Dalany alleged that under Corporations Code section 317 he was entitled to indemnity from APHC for the attorney fees he had incurred in defending the cross-complaint.

The defendants moved for summary judgment on the grounds the prior action had not been terminated in Dalany's favor and that therefore no claim for malicious prosecution or indemnity could be maintained. The trial court granted the motion and entered judgment in favor of the defendants. Dalany filed a timely notice of appeal.

## II

### DISCUSSION

### A.  *Favorable Termination*

█ The principles which govern this appeal are well established and were recently set forth in our opinion in *Pender* v. *Radin* (1994) 23 Cal.App.4th 1807, 1813-1814 [29 Cal.Rptr.2d 36] (*Pender*):

"We apply the standard of review for summary judgments set forth in *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122,

762 P.2d 46]. [Citation.] The trial court determines whether triable issues exist examining the affidavits and evidence, including any reasonable inferences which may be drawn from the facts. [Citation.] In examining the sufficiency of the affidavits, those of the moving party are strictly construed and those of the opposing party liberally construed. Any doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. [Citation.]

"On appeal from an order granting summary judgment, the appellate court examines the facts presented to the trial court and independently determines their effect as a matter of law in light of the above principles. [Citation.]

■ "We begin by noting that the tort of malicious prosecution, which is disfavored because of its potential chilling effect on the willingness of people to report crime or pursue legal rights in court, consists of the following elements: '[A] plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." ' [Citations.] If any of these elements is shown to be missing after a proper evaluation of the papers in a motion for summary judgment, the motion is to be granted. In the present case, we focus on the element of favorable termination.

■ "In order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit. [Citation.] ' "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution]." ' [Citation.] Where a proceeding is terminated other than on the merits, the reasons underlying the termination must be examined to see if the termination reflects the opinion of either the court or the prosecuting party that the action would not succeed. [Citation.] Generally, a dismissal resulting from a settlement does not constitute a favorable determination because '. . . the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. [Citation.]' [Citation.] After all, '[t]he purpose of a settlement is to *avoid* a determination of the merits.' [Citation.]"

In *Pender* one of three defendants in a prior contract dispute agreed to pay plaintiff $25,000 in exchange for dismissal of plaintiff's claims against all three defendants. The terms of the agreement were placed on the record and memorialized in a brief minute order. Following entry of the dismissal, the two nonpaying defendants filed a malicious prosecution action. In finding that the dismissal could not support a malicious prosecution action, we stated: "The termination of Radin's lawsuit was a result of an agreement. The Penders were a party to the agreement, and they may not disavow that agreement. There simply is no triable issue of fact with respect to the Penders being part of the settlement agreement. The settlement agreement was not on the merits. Accordingly, the Penders did not establish that Radin's lawsuit was terminated in their favor, and the motion for summary judgment was properly granted." (*Pender, supra,* 23 Cal.App.4th at p. 1817, fn. omitted.)

As in *Pender,* here Dalany cannot establish APHC's cross-complaint was terminated in his favor. The lengthy negotiations between counsel for Dalany and counsel for APHC leave no doubt the stipulation for entry of judgment and the judgment were entered as a result of settlement negotiations between Dalany and APHC. Moreover the terms of the stipulation and judgment, which allowed APHC to discharge its liability to Dalany for substantially less than the face amount of his loans to the corporation, demonstrate the judgment was the product of compromise by the parties and not any determination of the merits by the parties or the trial court.

We reject Dalany's contention that because the cross-complaint ended by way of a stipulated judgment instead of a stipulated dismissal it somehow reflects a favorable termination. Although *Pender* and other cases involved settlements effected by way of dismissals (see, e.g., *Villa* v. *Cole* (1992) 4 Cal.App.4th 1327, 1336 [6 Cal.Rptr.2d 644]), these cases do not turn on the particular vehicle chosen by the parties to terminate prior litigation, but on whether the termination was the result of an agreement of the parties. Indeed we note that where prior litigation is ended by unilateral dismissal, the element of favorable termination can be established. (See *Fuentes* v. *Berry* (1995) 38 Cal.App.4th 1800, 1808 [45 Cal.Rptr.2d 848].) However where, as here, termination is by way of an agreement by the parties, there is ambiguity with respect to the merits of the proceeding and in general no favorable termination for purposes of pursuing a malicious prosecution action occurs. (*Pender, supra,* 23 Cal.App.4th at p. 1814; *Villa* v. *Cole, supra,* 4 Cal.App.4th at pp. 1336-1337.) The ambiguity which arises

when parties enter into a settlement is not resolved because instead of a dismissal the parties enter into a stipulated judgment.[2]

■ In this regard it is important to note the requirement of favorable termination for purposes of pursuing a malicious prosecution action is distinct from the circumstances which give rise to application of the doctrines of res judicata and collateral estoppel. As the cases point out, a favorable termination is necessary as a reflection of the malicious prosecution plaintiff's innocence in the prior proceeding. (See *Lackner* v. *LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) Res judicata and collateral estoppel on the other hand are not concerned with the actual merits of a prior adjudication but solely with the need for finality. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 797 [126 Cal.Rptr. 225, 543 P.2d 593].) Thus while we have no doubt a stipulated judgment is res judicata between the parties and will therefore prevent further litigation of claims and issues within the scope of the stipulated judgment (see generally, *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658, 665 [268 Cal.Rptr. 284, 788 P.2d 1156]), such use of a stipulated judgment is unrelated to the particular requirements of a malicious prosecution action. Indeed, as the Supreme Court noted in *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra*, 50 Cal.3d at page 664, stipulated judgments " ' "have attributes both of contracts and of judicial decrees"; *a dual character that has resulted in different treatment for different purposes.*' [Citation.]"

■ We also reject Dalany's suggestion that his success in achieving summary adjudication as to some of the causes of action in the cross-complaint prior to entry of the stipulated judgment gave rise to a favorable termination, at least as to those claims. The Supreme Court has recently emphasized that although for purposes of determining probable cause each theory asserted in a prior action must be separately considered, separate consideration of prior theories of claims is not appropriate with respect to the element of favorable termination: " '[the] holding that a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause [citation] does not alter the rule there must first be favorable termination of the *entire* action. [Citation.] In *Bertero* [v. *National General Corp.* (1974) 13 Cal.3d 43 (118 Cal.Rptr. 184, 529 P.2d 608)], the question whether all or only part of the prior action had to be without probable cause arose only after judgment had been reached in the

[2]Contrary to Dalany's contention, nothing in *Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 684-685 [34 Cal.Rptr.2d 386, 881 P.2d 1083] requires that we ignore the unassailable fact that the stipulated judgment was the result of an agreement between the parties. All the *Crowley* court reminds us of is that we must consider the prior judgment "as a whole." (*Ibid.*)

plaintiff's favor in the prior action as a whole.' [Citation.]" (*Crowley* v. *Katleman, supra,* 8 Cal.4th at p. 686.)

In sum then, Dalany's settlement with APHC created ambiguity with respect to the merits of the cross-complaint and accordingly, he cannot now establish the cross-complaint was terminated in his favor. (*Pender, supra,* 23 Cal.App.4th at p. 1817.)

## B. *Indemnity*

Corporations Code section 317, subdivision (d), states that a corporation shall indemnify its agents against expenses incurred in defending claims which grow out of the agency and "[t]o the extent that an agent of a corporation has been successful on the merits." Dalany does not dispute that in order to recover under Corporations Code section 317, subdivision (d), he must make the same showing of a prior favorable termination required to maintain a malicious prosecution action. Thus his indemnity cause of action is also defective.

Judgment affirmed; respondents to recover their costs of appeal.

Huffman, J., and Nares, J., concurred.