[No. B158008. Second Dist., Div. Three. Apr. 30, 2004.]

HMS CAPITAL, INC., etc., Plaintiff and Respondent, v.
LAWYERS TITLE COMPANY, etc., Defendant and Appellant.

## COUNSEL

Richard D. Marks Professional Corporation and Richard D. Marks for Defendant and Appellant.

Kester & Isenberg and Charles F. Kester for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.**—The issue on appeal is whether the trial court erred in denying an anti-SLAPP motion.[1] The motion contended that a malicious prosecution lawsuit should be stricken. We affirm the order denying the motion in part because the party bringing the malicious lawsuit received a

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737] (*Jarrow Formulas, Inc.*).)

favorable termination on the merits of the underlying lawsuit, irrespective of the voluntary settlement of costs.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Introductory facts.*

Plaintiff and respondent HMS Capital Inc., a California corporation, (HMS) is a residential mortgage broker specializing in arranging refinancing of home mortgages in California with no points and no-cost loans. Defendant and appellant Lawyers Title Company, a corporation, (Lawyers Title) is in the business of providing title and escrow services for real estate transactions.

In May 1998, HMS and Lawyers Title entered into an oral contract, under which Lawyers Title was to provide title insurance and escrow services to HMS. A few months later, the parties ended their business relationship.

### 2. *The underlying litigation.*

On April 9, 1999, Lawyers Title filed suit against HMS (LASC No. BC 208521 (hereafter LASC No. BC 208521)). In its complaint and first amended complaint, Lawyers Title alleged it was owed approximately $40,000 for cancellation fees from various title services.

In an amended cross-complaint, HMS sought $13,578 for breach of contract, unjust enrichment, conversion, and interference with prospective economic advantage.

A court trial was held. The trial court ruled that Lawyers Title was to take nothing on its complaint, and HMS was awarded $7,185.27 (for the amount that had been held in escrow), plus prejudgment interest and costs on the cross-complaint. In rendering its opinion, the trial court issued a May 17, 2001, statement of decision in which it made a number of factual findings. The judgment entered on May 17, 2001, left open a space for the amount of costs to be awarded to HMS, which was to be determined later.

On May 24, 2001, HMS filed a memorandum of costs requesting $9,053.87 in costs.

On June 11, 2001, the trial court accepted and filed a stipulation between the parties regarding the amount of costs to be awarded to HMS. In the stipulation, the parties agreed that the total costs awarded to HMS was to be

$7,906.36.[2] On June 11, 2001, the trial court amended the judgment by interlineation to include a $7,906.36 costs award. The June 11, 2001, order of the court read: "Good cause appearing, HMS is to be awarded $7,906.36 in costs in accordance with the [parties'] Stipulation, and such costs are to be included in the Judgment." Lawyers Title asserts that it paid the judgment and a full satisfaction of judgment was filed. Lawyers Title did not appeal.

### 3. *The present proceedings.*

On December 20, 2001, HMS filed a malicious prosecution case against Lawyers Title.

Lawyers Title responded with a motion to strike, pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute. Lawyers Title attached to its motion the declaration of its attorney, Richard D. Marks, a copy of Code of Civil Procedure section 425.16, a copy of an appellate court case discussing the application of anti-SLAPP motions to malicious prosecution actions, and the June 11, 2001, stipulation regarding costs.[3]

HMS opposed the motion. HMS attached to its opposition the following: a declaration from its counsel; the May 17, 2001, judgment; the statement of decision in LASC No. BC 208521; and a communication that had been sent from HMS's attorney to Lawyers Title's counsel during the pendency of LASC No. BC 208521. This communication stated in part, "[g]iven [the] clear language [of the escrow instructions we used] we believe [Lawyers Title's] claims to be frivolous." This communication had attached a copy of the escrow instructions the parties had used. The escrow instructions stated in part, "HMS Capital will not be paying any cancellation fees whatsoever to Lawyers Title . . . ." In his declaration, HMS's counsel declared that on numerous occasions he had told Lawyers Title that its case was unfounded, but Lawyers Title's counsel insisted on a payment of $25,000 to resolve the case. HMS's counsel further declared that in LASC No. BC 208521, Lawyers Title had taken no depositions and had promulgated only one set of form interrogatories.

HMS contended in its opposition that it had a probability of prevailing on its malicious prosecution case because: (1) LASC No. BC 208521 had been

---

[2] The stipulation read in part: "On May 24, 2001, HMS filed its Memorandum of Costs wherein HMS sought $9,053.87 in costs to be paid by [Lawyers Title]. [¶] [] Rather than litigate over certain disputed costs, the Parties have agreed to reduce the amount of costs sought by $1,147.51. [¶] [] Thus, the total amount of costs to be awarded to HMS in this action—and to be paid by [Lawyers Title]—should be $7,906.36."

[3] In its motion to strike, Lawyers Title conceded that the underlying case had been resolved in favor of HMS. In a subsequent pleading, Lawyers Title deleted this concession.

terminated in its favor; (2) the findings in the statement of decision in LASC No. BC 208521 demonstrated that Lawyers Title's breach of contract claims lacked probable cause; and (3) LASC No. BC 208521 was initiated with malice as demonstrated by (a) the trial court's findings in that case; (b) the minimal discovery conducted by Lawyers Title in that case; and (c) the fact that HMS had informed Lawyers Title's counsel that its breach of contract claims were baseless.

In its reply brief, Lawyers Title contended: (1) LASC No. BC 208521 had not been terminated favorably to HMS because the judgment was entered upon stipulation; (2) the claims in LASC No. BC 208521 were legally tenable and the trial court's statement of decision in that case contained no explicit finding that there was no probable cause to initiate the case; (3) the amount of discovery conducted in LASC No. BC 208521 was not relevant with regard to malice; and (4) settlement discussions were inadmissible and not an indicia of lack of probable cause or malice. Lawyers Title submitted an additional declaration from its counsel; the May 17, 2001, judgment, as modified on June 11, 2001; the June 11, 2001, minute order in which the trial court directed the May 17, 2001, judgment be modified; and the pleadings from LASC No. BC 208521.

On April 8, 2002, the trial court denied Lawyers Title's anti-SLAPP motion. Lawyers Title appealed from the denial of the motion.[4]

## DISCUSSION

1. *The remedy of a special motion to strike under Code of Civil Procedure section 425.16.*

The purpose underlying the anti-SLAPP statute, Code of Civil Procedure section 425.16 (hereinafter section 425.16), is set forth therein. It states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)

To meet this concern, section 425.16 provides that a "cause of action against a person arising from any act of that person in furtherance of the

---

[4] An order denying a special motion to strike is appealable. (Code Civ. Proc., §§ 425.16, subd. (j), 904.1.)

person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

 The determination that the plaintiff will prevail on the claim is made on the basis of the pleadings, as well as "supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) If it is determined that there is a probability the plaintiff will prevail, that determination is inadmissible at any later stage of the case and does not affect the applicable burden or degree of proof. (§ 425.16, subd. (b)(3).)

### 2. *Burdens of proof.*

We "summarize a court's task in ruling on an anti-SLAPP motion to strike as follows. Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

In other words, "the moving defendant's burden is to show the challenged cause of action 'arises' from protected activity. [Citations.] Once [but only if] it is demonstrated the cause of action *arises* from the exercise of the defendant's free expression or petition rights, then the burden shifts to the plaintiff to show a probability of prevailing in the litigation." (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 151 [106 Cal.Rptr.2d 843].)

 "[S]ection 425.16 is analogous to other statutes requiring the plaintiff to make a threshold showing, which are aimed at eliminating meritless litigation at an early stage. [Citation.]" (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 355 [42 Cal.Rptr.2d 464].) A plaintiff opposing an anti-SLAPP motion bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303]; *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613–614 [129 Cal.Rptr.2d 546].)

Anti-SLAPP motions must be supported (and opposed) by declarations stating facts upon which the liability or defense is based. (§ 425.16, subd. (b).)

■ In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. (*Roberts v. Los Angeles County Bar Assn., supra,* 105 Cal.App.4th at pp. 613–614.) Thus, declarations may not be based upon "information and belief" (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497–1498 [45 Cal.Rptr.2d 624]) and documents submitted without the proper foundation are not to be considered. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1238 [132 Cal.Rptr.2d 57].)

■ The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45–46 [134 Cal.Rptr.2d 420]) and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576]; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 [131 Cal.Rptr.2d 201].) The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward. (*Robertson v. Rodriguez, supra,* 36 Cal.App.4th at p. 356, fn. 3.)

"Whether plaintiffs have established a prima facie case is a question of law. [Citation.]" (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].)

We review the trial court's rulings on an anti-SLAPP motion de novo, conducting an independent review of the entire record. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625]; *Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064 [82 Cal.Rptr.2d 10].)

3. *The moving defendant in this malicious prosecution case, Lawyers Title, met its burden of showing the challenged cause of action arose from protected activity.*

■ As indicated, the threshold issue requires the defendant to show that the challenged cause of action arises from protected activity. (*Jarrow Formulas, Inc., supra,* 31 Cal.4th at p. 736; *Shekhter v. Financial Indemnity Co., supra,* 89 Cal.App.4th at pp. 150–151.) ■ The recent case of

*Jarrow Formulas, Inc.* establishes that a cause of action for malicious prosecution is subject to anti-SLAPP scrutiny under section 425.16.[5] As stated in *Jarrow Formulas, Inc.*, a malicious prosecution cause of action arises from the right to petition as it "arises from an underlying lawsuit, or petition to the judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit. [Citation.]" (*Jarrow Formulas, Inc., supra,* at pp. 734–735.)

> 4. *HMS, the malicious prosecution plaintiff and the party opposing the anti-SLAPP motion, met its burden of establishing a probability of prevailing.*

Because the initial burden of showing that the malicious prosecution claim was subject to scrutiny under section 425.16 was met, the burden shifted to HMS. HMS, as the plaintiff in this case, had to establish a probability of prevailing in the litigation. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) "To satisfy this prong, the plaintiff must 'state[] and substantiate[] a legally sufficient claim.' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]" (*Jarrow Formulas, Inc., supra,* 31 Cal.4th at p. 741.)

As discussed below, when analyzed in this manner, the trial court's ruling denying the anti-SLAPP motion was correct.

> a. *Elements of malicious prosecution.*

In an action for malicious prosecution, the plaintiff must establish that the prior underlying action (1) was commenced by or at the direction of the defendant, or the defendant continued to prosecute it after discovering it lacked probable cause, and it was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Zamos v. Stroud, supra,* 32 Cal.4th at p. 963.)

---

[5] On October 28, 2002, we took the instant appeal off calendar, on our own motion, pending the resolution of *Jarrow Formulas, Inc., supra,* 31 Cal.4th 728. The Supreme Court issued its opinion on August 18, 2003. Thereafter, we provided the parties with an opportunity to file supplemental briefs and placed the case on calendar.

b. *HMS met its burden.*

(1) *HMS made a prima facie showing that it had obtained a favorable termination of the underlying action, LASC No. BC 208521.*

■ The first element of a malicious prosecution cause of action is that the underlying case must have been terminated in favor of the malicious prosecution plaintiff. The basis of the favorable termination element is that the resolution of the underlying case must have tended to indicate the malicious prosecution plaintiff's innocence. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 [9 Cal.Rptr.3d 97, 9 P.3d 497, 83 P.3d 497]; *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) When prior proceedings are terminated by means other than a trial, the termination must reflect on the merits of the case and the malicious prosecution plaintiff's innocence of the misconduct alleged in the underlying lawsuit. (*Casa Herrera, Inc. v. Beydoun, supra,* at pp. 341–342; *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814 [29 Cal.Rptr.2d 36]; see cases discussed in *Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827 [145 Cal.Rptr. 829] [the following reflect on the merits as there is assumption that one does not abandon meritorious actions once instituted: dismissal of criminal action sought by district attorney after preliminary hearing, dismissal of prosecution of a criminal action for lack of evidence, and dismissal for failure to prosecute]; e.g., *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191 [121 Cal.Rptr.2d 794] [summary judgment granted and sanctions issued because claim meritless].)

Here, after a trial on the merits, LASC No. BC 208521 ended with Lawyers Title being awarded nothing on its complaint and HMS being awarded $7,125.27 on its cross-complaint against Lawyers Title. These facts present a prima facie showing that the underlying case was terminated in HMS's favor.

Lawyers Title contends, however, that LASC No. BC 208521 was *not* resolved in HMS's favor because after the trial on the merits, the parties entered into a compromise and stipulation as to the amount of costs, and the judgment was modified to reflect this agreement. To support this contention, Lawyers Title cites *Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409 [104 Cal.Rptr.2d 683]. *Ferreira* follows the general rule that a case concluded as a result of settlement does not result in a favorable termination because such a result is ambiguous and does not reflect on the merits, but leaves open the question of the parties' guilt or innocence. (*Pender v. Radin, supra,* 23 Cal.App.4th at p. 1814; *Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 827 [50 Cal.Rptr.2d 13].)

*Ferreira* does contain some broad language that might assist Lawyers Title. (E.g., *Ferreira v. Gray, Cary, Ware & Freidenrich, supra,* 87 Cal.App.4th at p. 413 ["where both sides give up anything of value in order to end the litigation, a party cannot later claim he received a favorable termination. [Citations.]" And, "Where the underlying litigation ends by way of a negotiated settlement, there is no favorable termination for the purposes of pursuing a malicious prosecution action."].) However, *Ferreira* must be analyzed according to its facts, which are not analogous to the present case. In *Ferreira,* a verdict was returned by a jury. One party "believed there were strong grounds to challenge the verdict through posttrial motions and on appeal." (*Id.* at p. 412.) Thereafter, the parties discussed settling the merits of the litigation. While settlement discussions were underway, a judgment on the verdict was entered. (*Ibid.*) Shortly thereafter, the parties settled the case, including an agreement by one side not to appeal and an agreement by the other side to accept $3.00 as full satisfaction of his $75,982 damages award. As a result of the settlement agreement, an amended judgment was entered. (*Ibid.*) *Ferreira* concluded that there was no favorable termination because the settlement ended the litigation.

In contrast, here, the settlement and the resulting stipulation did not relate to the merits of the parties' dispute. They dealt only with the ancillary issue of the amount of costs. Instead of HMS receiving $9,053.87 in costs, the parties agreed to reduce the sum owed by $1,147.51 so that HMS would receive $7,906.36. (See *ante,* fn. 2.) Unlike *Ferreira,* this case does not involve a situation where the parties forgo a trial and settle the dispute, nor as in *Ferreira,* where the parties resolve all issues by settlement after a trial.[6] (cf. *Dalany v. American Pacific Holding Corp., supra,* 42

---

[6] Neither party cites *Pender v. Radin, supra,* 23 Cal.App.4th 1807, a case that concluded a waiver of costs and attorney fees did *not* result in a favorable termination. However, the facts of *Pender* make it distinguishable from the case before us. In *Pender v. Radin,* three family members were sued by Irene Radin on a remodeling contract. To settle the case, one defendant (Herbert Pender IV, the contractor) paid Radin $25,000; to assist Herbert, the two other defendants (Gisele and Francine Pender) forgave a debt Herbert owed them; and all three family members agreed to waive costs and attorney fees. (*Id.* at pp. 1812, 1814.) After the breach of contract case was dismissed, Gisele and Francine brought a malicious prosecution case against Radin. In the malicious prosecution case, a summary judgment in favor of Radin was affirmed on appeal. The appellate court noted that the settlement of the breach of contract case was negotiated by one attorney on behalf of all three family members. (*Id.* at p. 1814.) Further, in the resolution of the breach of contract case, Gisele and Francine had given up something of value by waiving fees and costs. (*Ibid.*) Notwithstanding that Gisele and Francine had not paid Radin to resolve the breach of contract lawsuit, Gisele and Francine had been parties to a global settlement, in which the waiver of costs and fees was a necessary part. (*Id.* at pp. 1814–1815; *Fuentes v. Berry* (1995) 38 Cal.App.4th 1800 [45 Cal.Rptr.2d 848] [favorable termination discussion involved whether settlement necessarily included all parties].)

Cal.App.4th 822 [no favorable termination where motion for summary adjudication granted in part and thereafter lengthy settlement negotiations result in stipulated judgment being filed prior to trial on merits].) Here, the settlement was entered into by HMS and Lawyers Title after a full trial on the merits in which HMS was victorious. HMS's agreement to reduce its cost request by $1,000 did not reflect on the merits of the case.

HMS made a prima facie showing that LASC No. BC 208521 was terminated in its favor.

> (2) *HMS made a sufficient prima facie showing that there was a lack of probable cause to commence the underlying action, LASC No. BC 208521.*

To meet its burden in opposing the anti-SLAPP motion, HMS had to present a prima facie case addressing the second element of malicious prosecution, i.e., that the underling lawsuit (i.e., LASC No. BC 208521) was brought without probable cause.

The parties agree that Lawyers Title's lawsuit was premised upon a claim that HMS breached the contract by failing to pay cancellation fees. According to the statement of decision, it was undisputed that at no time did Lawyers Title ever advise HMS that cancellation fees would be charged. According to the statement of decision, it was undisputed that there were no discussions about cancellation fees during negotiations of the contract and it was undisputed that at no time thereafter were such discussions held. The statement of decision reflected that in the trial, it was undisputed that cancellation fees were not standard in the industry and that Lawyers Title did not charge such fees ordinarily.[7] Lastly, a copy of the escrow instructions

---

[7] The statement of decision in LASC No. BC 208521 was submitted to the trial court by HMS in opposition to Lawyers Title's anti-SLAPP motion. On appeal, Lawyers Title contends that the findings and statements of the trial court as articulated in the statement of decision cannot be considered by us to determine if HMS met its burden to prove a probability of prevailing in this malicious prosecution lawsuit. However, Lawyers Title never objected in the trial court on these grounds. Rather, Lawyers Title's objection was narrowly drawn. Lawyers Title cited Code of Civil Procedure section 1858 (in *constructing a statute or instrument, judges may not insert what was omitted*) to argue that the statement of decision did not include an *express* finding on the issue of probable cause and thus, it was improper for such an express finding to be interlineated into that document. Because Lawyers Title did not argue in the trial court that the statements and findings of fact contained in the statement of decision constituted inadmissible evidence, Lawyers Title is precluded from doing so on appeal. (Evid. Code, § 353, subd. (a); *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1226–1227, fn. 13 [70 Cal.Rptr.2d 1212, 83 Cal.Rptr.2d 235] [evidentiary objections waived if not made in trial court].)

Also, Lawyers Title did not argue in the trial court that it was improper to judicially notice the facts as determined in the statement of decision. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th

used by the parties specifically stated that "HMS Capital will not be paying any cancellation fees whatsoever to Lawyers Title . . . ."

These facts could demonstrate that there was no evidence upon which Lawyers Title could claim it was owed cancellation fees. These facts support a prima facie showing that Lawyers Title lacked probable cause to bring the underlying case as it was not legally tenable. (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596–597 [71 Cal.Rptr.2d 657] [unreasonable to prosecute a case where there is a complete absence of supporting evidence]; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165 [80 Cal.Rptr.2d 66] [to avoid malicious prosecution, claim must be legally and factually tenable]; *Jarrow Formulas, Inc., supra,* 31 Cal.4th at p. 742 [probable cause measured objectively]; *Zamos v Stroud, supra,* 32 Cal.4th at p. 963.)

Lawyers Title points to *Jarrow Formulas, Inc., supra,* 31 Cal.4th 728, to argue that HMS did not meet its burden with regard to the lack of probable cause element. In *Jarrow Formulas, Inc.,* the malicious prosecution case was based upon the granting of a summary judgment motion on a cross-complaint alleging slander of title and interference with economic advantage. (*Id.* at p. 732.) In opposing the anti-SLAPP motion, the malicious prosecution plaintiff relied exclusively on the summary judgment. The minute order granting summary judgment stated that " 'no competent evidence' of harmful activity by Jarrow or damages to LaMarche's business had been presented." (*Id.* at p. 742, fn. omitted.) In defending the anti-SLAPP motion, Jarrow argued that the summary judgment in its favor on the underlying cross-complaint established, as a matter of law, that it had a probability of prevailing on the malicious prosecution case. *(Ibid.) Jarrow Formulas, Inc.,* concluded that this finding did not refute, as a matter of law, the argument that the underlying lawsuit was objectively reasonable, or legally tenable, when filed. (*Id.* at p. 743.) This conclusion partially was based upon the fact that parties have a right to present arguably correct issues, even if they subsequently lose. (*Id.* at p. 742.) *Jarrow Formulas, Inc.,* further stated that a summary judgment does not necessarily establish malice. (*Id.* at p. 743.)

Unlike *Jarrow Formulas, Inc.,* we are not dealing with a summary judgment motion and the evidence presented here demonstrated that Lawyers Title had no probable cause to file its case.

HMS made a sufficient prima facie showing that Lawyers Title lacked probable cause to bring the underlying action.

---

1548, 1563 [8 Cal.Rptr.2d 552] [may take judicial notice that trial court made findings, but judicial notice not properly taken of the truth of the factual findings of the trial judge].) Thus, Lawyers Title is foreclosed from doing so on appeal. (*Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].)

### (3) *HMS made a sufficient prima facie showing of malice.*

The remaining issue is whether HMS made an adequate showing that Lawyers Title acted with malice in commencing LASC No. BC 208521.

■ "The malice element of the malicious prosecution tort goes to the defendant's subjective intent . . . . It is not limited to actual hostility or ill will toward the plaintiff." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1156–1157 [85 Cal.Rptr.2d 726].) It can exist, for example, where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim. A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498, fn. 29 [78 Cal.Rptr.2d 142]), but the lack of probable cause must be supplemented by other, additional evidence. (*Id.* at p. 498.) Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence. (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522 [8 Cal.Rptr.3d 584].)

As this court explained in *Downey Venture v. LMI Ins. Co.,* "[m]erely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation], *without more,* would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence. [¶] . . . [T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture v. LMI Ins. Co., supra,* 66 Cal.App.4th at pp. 498–499, fn. omitted, original italics.)

Here, with respect to the issue of malice, according to the statement of decision, at no time did Lawyers Title discuss cancellation fees with HMS. Lawyers Title was informed by HMS's attorney that the escrow instructions used by the parties specifically stated that such fees would not be charged. Given this language and the lack of any discussion between the parties about such fees, it could be concluded that Lawyers Title's claims in LASC No. BC 208521 were frivolous. It was also undisputed that Lawyers Title took no depositions, promulgated only one set of form interrogatories, and refused to dismiss LASC No. BC 208521 unless HMS paid $25,000. These facts could support a conclusion that Lawyers Title was simply trying to squeeze a settlement from HMS on a baseless case, and hence evidence of malice.

Lawyers Title argues we cannot consider that it had requested a specified sum from HMS to settle the case, as evidence of settlement discussions are not admissible. (Evid. Code, §§ 1152, 1154 [statutes prohibiting use of settlement negotiations to show liability or invalidity of a claim].) Lawyers Title has waived this evidentiary objection because it did not obtain a ruling on it in the trial court. (Cf. *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Further, malice can be shown by initiating litigation for an improper purpose. Lawyers Title cites no case holding that settlement discussions are inadmissible to show that a case was litigated for an improper purpose. (C.f. *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 915 [93 Cal.Rptr.2d 364] [unreasonably low offer admissible to show bad faith].) Thus, the fact that Lawyers Title's counsel insisted on a payment of $25,000 to dismiss the case, irrespective of the facts, would be admissible.

We concur in the trial court's conclusion that HMS made a sufficient prima facie showing that Lawyers Title acted with the subjective intent to deliberately misuse the legal system for personal gain or satisfaction at HMS's expense.

In opposing the anti-SLAPP motion, HMS met its burden of establishing a probability of prevailing on its malicious prosecution lawsuit.[8]

## DISPOSITION

The order denying the motion by Lawyers Title to strike HMS's complaint is affirmed. HMS shall recover costs on appeal.

Klein, P. J., and Croskey, J., concurred.

---

[8] By our conclusion, we express no opinion as to the merits of HMS's malicious prosecution claim. We simply hold that HMS has met its burden of showing its action has the sufficient merit required to survive an anti-SLAPP motion. (§ 425.16, subd. (b)(3).)