Filed 8/12/15  Morris v. Smith CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN D. MORRIS, et al.,<br><br>     Plaintiffs and Appellants,<br><br>          v.<br><br>STEVEN A. SMITH,<br><br>     Defendant and Respondent. | F068758<br><br>(Super. Ct. No. 684623)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. William A. Mayhew, Judge.

Ellis Law Group, Mark E. Ellis, Theresa M. LaVoie, and William A. Lapcevic for Plaintiffs and Appellants.

Goodman & Associates, Karen M. Goodman, Summer D. Haro and Virginia Cale for Defendant and Respondent.

-ooOoo-

John D. Morris (John) and Thomas C. Morris (Thomas) (collectively the brothers) filed a malicious prosecution action against respondent Steven A. Smith, individually and doing business as Law Office of Steven A. Smith (Smith).  The brothers' sister, Mary Kay Herger (Mary Kay), was also named as a defendant in the action, with four causes of

action alleged against her, including malicious prosecution. The trial court granted Smith's special motion to dismiss the malicious prosecution claim alleged against him under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc. § 425.16)[1] based on the brothers' inability to show a probability of prevailing on the issue of probable cause.

On appeal, the brothers contend the trial court erred in granting the motion because they established a probability of prevailing on all elements of the malicious prosecution claim. We affirm the order on the basis that the voluntary dismissal of the brothers from the underlying action was not a favorable termination within the meaning of the malicious prosecution law, as Smith's undisputed evidence shows the dismissal was based solely on financial considerations, and does not reflect the merits of the underlying action. Contrary to the brothers' assertion, they adduced no evidence from which a jury reasonably could find favorable termination. Given our decision, we are not required to address the probable cause and malice elements of the malicious prosecution action.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a family dispute following the September 30, 2008 death of Charles A. Morris, Jr. (Charles) between Charles' wife, Kathleen Morris (Kay) (who was 76 years old when Charles died), their daughter Mary Kay, and their two sons, Thomas and John.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] After briefing was completed in this case, the brothers filed a motion for the production of additional documentary evidence on appeal, in which they asked us to augment the record on appeal with additional evidence pursuant to section 909 and California Rules of Court, Rule 8.252(c). The brothers argue the evidence is relevant to the element of malice and to correct alleged misrepresentations Smith made in his supplemental declaration relating to malice. We deferred ruling on the motion, which we now deny since the documents are irrelevant as we do not address the malice element.

In 1996, attorney Richard Calone (Calone), a partner in the Calone Law Group LLP, prepared certain estate planning documents for Charles and Kay. These documents included: (1) the Kay Morris Family Insurance Trust (Insurance Trust), which was to be funded for Kay's benefit by the proceeds of a life insurance policy at Charles' death; and (2) the Charles A. Morris, Jr. and Kathleen Morris Family Trust (Morris Trust), which was set up to receive proceeds, profits, rents, and royalties from a limited partnership held by the Morris Trust that held title to approximately 400 acres of land.

In 2005, Calone prepared the Morris Family Contract, which divided all of the real property in the limited partnership between the brothers and Mary Kay in the following approximate amounts: 160 acres to Thomas, 120 acres to John, and 140 acres, plus a 3.5 acre parcel on which Charles and Kay's residence was located, to Mary Kay. The property was to be distributed upon the deaths of both Charles and Kay, unless Kay made an election, on Charles' death, to immediately distribute the estate property and proceeds.

In 2006, Calone prepared the Morris Family Settlement Agreement (Settlement), which modified Charles and Kay's estate plan. The settlement arose out of a dispute concerning Mary Kay's indebtedness to various persons and entities in connection with the construction of her home, including an encumbrance on the 3.5 acre parcel; as of October 2006, the construction project had not been completed. The family agreed the limited partnership would sell 70 acres designated as Mary Kay's inheritance to satisfy the outstanding indebtedness, Mary Kay would be allowed to complete the home construction project, and the interests of the other family members would not be used for the construction without the parties' written consent.

On Charles' death in 2008, the Insurance Trust was funded with $225,000, the proceeds of the life insurance policy. Thomas was the trustee; John would become the trustee if Thomas was unable to perform, and Mary Kay would become the trustee should John be unable to perform. Pursuant to the Insurance Trust's terms, the trustee could

invade the principal only to pay expenses related to Kay's health, welfare, education and maintenance.

After Charles' death, Kay disclaimed her interest in the partnership real property and asked that it be distributed pursuant to the Morris Family Contract. In the spring of 2009, it was discovered that the 3.5 acre parcel, which had been placed in Charles' name as his separate property prior to his death so he could refinance the parcel to raise money for Mary Kay's home construction project, had not been transferred back to the trust, making Kay the legal vested owner. In order to vest the parcel inside the trust at Charles' death nunc pro tunc, which would allow Kay to avoid the costs and tax burden of probate and place the parcel in Mary Kay's name faster, a *Heggstad* petition needed to be filed to obtain a court order declaring the parcel an asset of the trust.[3]

In June 2009, Mary Kay and Kay contacted Smith about preparing a *Heggstad* petition; Smith told them he charged a flat fee of $1,500 to prepare such a petition. Ultimately, Calone prepared the petition, as well as the other documents to effect the disclaimer, including Kay's agreement to withdraw from the limited partnership, an assignment of partnership assets and life estate to Kay as the withdrawing partner, an agreement regarding the allocation and distribution of assets held in the Morris Trust, and an agreement dissolving the limited partnership. Calone also prepared an "Indemnification and Hold Harmless Agreement" (the Indemnity Agreement), which was entered into effective July 22, 2009 between Mary Kay, as the indemnitor, and Kay, the brothers and the limited partnership, as the indemnitees. The Indemnity Agreement provided that refinancing of the 3.5 acre parcel was contingent on, among other things, Mary Kay bearing the expenses incurred in bringing the *Heggstad* petition.

---

[3] A *Heggstad* petition is a petition to retitle assets into the trust; it is based on the authority of *Estate of Heggstad* (1993) 16 Cal.App.4th 943.

4.

On August 31, 2009, Calone billed Kay $17,780.59 for his legal services; as of April 2010, Calone claimed he was owed approximately $23,000 for his services. A dispute arose over the payment of Calone's fees, including the reasonableness of the fees, whether they included work unrelated to the *Heggstad* petition, and who would pay them. According to Thomas, Mary Kay and Kay demanded he pay Calone's fees out of the principal of the Insurance Trust, but he refused to do so based on the Indemnity Agreement, which required Mary Kay to pay the fees, and his opinion that such a distribution would not be for Kay's health, welfare, education or support. In November 2009, Calone advised Thomas that he had the authority to grant Kay's request to distribute the balance of the Insurance Trust to her, but if he decided not to do so, he could resign as trustee. In December 2009, Thomas resigned as trustee, thereby making John the trustee.

In February 2010, the brothers, through their attorney Leslie Kalim McHugh (McHugh), advised Mary Kay that they had received notice of a claim from Calone related to his unpaid invoices totaling $31,337.23 as defined in the Indemnity Agreement, which, as indemnitor, she was required to defend. By December 2010, Calone still had not been paid.

Ultimately, Mary Kay retained Smith to represent her in a potential case against her brothers and Calone, while Kay retained attorney David M. Zeff (Zeff) to represent her in the same potential action. Since Kay's and Mary Kay's claims involved the same transactions and parties, it was agreed, in the interest of judicial economy, to plead their claims together in a single complaint.

In January 2011, Zeff and Smith filed an initial complaint on behalf of their respective clients, with Kay and Mary Kay as the named plaintiffs, and the brothers and Calone as the named defendants. A first amended complaint was filed on February 24, 2011, to which Calone demurred. In July 2011, Mary Kay and Kay filed a second amended complaint (SAC), which became the operative complaint in the underlying

action. Mary Kay alleged two causes of action against the brothers in the SAC: (1) breach of fiduciary duty – constructive fraud; and (2) rescission – mutual mistake.[4]

Specifically, the SAC alleged that Calone failed to provide any conflict of interest disclosure or obtain a waiver of any conflict of interest when he prepared the disclaimer and indemnity documents; Calone presented the documents to Kay and Mary Kay for signature without explaining their meaning, content, or impact, or that he had a conflict of interest; Calone billed Kay and Mary Kay an "unconscionable sum" over $22,000 for the *Heggstad* petition, where the normal and customary rate for such services would fall in the range of $1,500 to $2,000; when Kay asked for the money to pay the bill from the Insurance Trust, she was told Mary Kay was responsible for the bill pursuant to the Indemnity Agreement; Calone pressured Kay for payment despite her having protested the amounts billed; and when Kay did not pay, Calone demanded payment from John, as trustee of the Insurance Trust, advising him the payment could be recouped from Mary Kay pursuant to the Indemnity Agreement.

Mary Kay alleged her brothers breached the fiduciary duties they owed her as partners in the family partnership when they (1) failed to tell her that by executing the Indemnity Agreement, she would be held responsible for all the legal fees and costs Calone charged for the *Heggstad* petition, (2) failed to disclose Calone's conflicts of interest in jointly representing Kay, Mary Kay and the brothers in preparing the disclaimer and indemnity documents, and (3) assured Mary Kay that the documents protected her and Kay's interests, did not advance the brothers' interests at Mary Kay's expense, and would not work to Mary Kay's detriment.[5] Kay and Mary Kay sought to

---

[4] Kay joined in Mary Kay's claims against the brothers. Kay and Mary Kay also alleged legal malpractice and breach of fiduciary duty causes of action against Calone. Kay alleged causes of action against Calone and the brothers for fraud, deceit, and fiduciary elder abuse, and a cause of action for breach of contract against Thomas.

[5] Kay separately alleged the brothers breached the fiduciary duties they owed her by: (1) failing to advise her that the disclaimer and indemnity documents would harm her

6.

recover economic and noneconomic damages for the brothers' breaches, including physical, mental, emotional distress, stress, sleep deprivation and anxiety, in a sum to be ascertained, but which was certain to exceed $500,000, as well as punitive damages.

The rescission claim alleged that the transactions by which Kay transferred ownership interests to the brothers and by which Mary Kay executed a document purporting to require her to indemnify the brothers, resulted from "mutual mistakes of both fact and law" by the parties, which were grounds for rescission of all transactions and "placement of the parties back to the status quo ante." Kay and Mary Kay also sought to remove John as trustee of the Insurance Trust, and to name Mary Kay as trustee in his place.

On November 10, 2011, Calone filed an answer to the SAC and cross-complaint against Kay and Mary Kay seeking $37,836.22 for his fees, plus prejudgment interest. The parties engaged in written discovery, and Mary Kay and Kay were both deposed in April 2012. In February 2012, John resigned as trustee of the Insurance Trust.

After Kay's and Mary Kay's depositions, they reached a settlement with Calone, in which Calone agreed to dismiss his cross-complaint in exchange for a general release and dismissal of all causes of action against him. Pursuant to the settlement agreement, separate dismissals – one by Smith on Mary Kay's behalf and the other by Zeff on Kay's behalf – were entered on May 21, 2012. All claims in the SAC against Calone and the cross-complaint were dismissed with prejudice.

---

legal and financial interests, advance their interests at Kay's expense, and place her living situation and financial abilities in their hands and out of her control; (2) failing to advise her that by executing the Indemnity Agreement, Mary Kay would be held responsible for all legal fees and costs Calone charged for the *Heggstad* petition; and (3) failing to disclose Calone's conflicts of interest and assuring Kay that the disclaimer and indemnity documents protected her and Mary Kay's interests and did not advance the brothers' interests at Mary Kay's expense.

On May 30, 2012, the brothers' attorney who represented them in the underlying action, William A. Lapcevic (Lapcevic), asked Smith and Zeff to stipulate to the filing of a cross-complaint by the brothers against Mary Kay. Smith and Zeff declined. On June 4, 2012, a case management conference was held for preferential trial setting, with Zeff, Smith and Lapcevic all present. The trial court set the matter for trial on September 11, 2012, after considering the attorneys' calendars. Lapcevic told Smith he intended to move ex parte for leave to amend and file a cross-complaint, and again asked for a stipulation. Smith refused and told Lapcevic he would vehemently oppose any such motion.

On June 5, 2012, Mary Kay dismissed the remainder of the SAC, including her claims against her brothers, with prejudice. Kay, however, continued to pursue her claims against the brothers. That same day, the brothers filed a motion for leave to file a cross-complaint against Mary Kay for breach of contract, fraud and deceit, and breach of fiduciary duty. The brothers, who had filed answers to the SAC in August 2011, asserted they obtained newly discovered information during Kay's and Mary Kay's depositions that justified filing a cross-complaint against Mary Kay.

In the proposed cross-complaint, the brothers alleged that, based on the fact it was Mary Kay's actions that caused the 3.5 acre parcel to be outside the trust, "the parties agreed" she "must sign" an agreement to indemnify and hold harmless Kay and the brothers for any expenses which arose out of the *Heggstad* petition, drafting the Indemnity Agreement, and financing the 3.5 acre parcel. The proposed cross-complaint further alleged that based on Mary Kay's "scofflaw-like history as well as her fraudulent acts toward her own father," the brothers would move forward with the dissolution of the partnership only if Mary Kay would agree to pay for all attorney fees associated with the petition, Indemnity Agreement and financing. The proposed cross-complaint alleged Mary Kay and the brothers were partners who owed each other fiduciary duties, including the duty to disclose facts relevant to the transaction and to avoid self-dealing and

8.

conflicts of interest, which duties Mary Kay breached by falsely promising to indemnify the brothers for attorney fees related to drafting the petition and Indemnity Agreement, and executing the agreement without any intention of paying those fees.

Smith filed written opposition to the motion on Mary Kay's behalf. Smith argued the brothers did not act in good faith in bringing the motion. In his accompanying declaration, Smith stated that based upon the dismissal of the claims involving Calone, Mary Kay was no longer entitled to the relief she pled in the SAC, as she only sought to void the indemnity agreement and Calone was no longer seeking his fees, and while Calone's attorneys knew this and offered to include a dismissal of the entire action for Mary Kay with respect to all defendants, that offer was withdrawn. Smith asserted that allowing the cross-complaint to be filed would be extremely prejudicial to Mary Kay, since she dismissed Calone due to the fact there were no other causes of action pending against her and she would be denied a claim against the one party who could have indemnified her against an award of damages to the brothers.

The trial court denied the brothers' motion on June 19, 2012 on the following grounds: (1) the alleged information upon which the cross-complaint was based had been available for some time and the delayed discovery was due to the brothers' failure to undertake their own written discovery; (2) the deposition excerpts upon which the brothers based their claims did not provide a sufficient basis for those claims; and (3) allowing the cross-complaint would not serve the interests of justice, but rather would prejudice Mary Kay in view of the recent dismissal of her claims against other defendants who may have been the only parties to provide her indemnity under the subject agreement.

On June 3, 2013, the brothers filed the present action against Smith and Mary Kay. As pertinent here, in the first amended complaint, filed September 9, 2013, the brothers alleged that Smith subjected them to malicious prosecution by instituting and maintaining the underlying action against them.

9.

Smith filed a special motion to strike under the anti-SLAPP law, section 425.16, arguing that the brothers had no probability of success on their malicious prosecution claim as there had not been a favorable termination on the merits, Smith had probable cause to prosecute the underlying case, and Smith lacked malice in prosecuting the case. Smith explained in his declaration in support of the motion that before filing the complaint in the underlying action, he evaluated Mary Kay's potential claims based on facts Mary Kay and Kay communicated to him, his review of the documents Mary Kay provided, and his own legal knowledge and experience regarding fiduciary relationships and duties, and formed the opinion that the brothers had breached their fiduciary duties to Mary Kay. Smith believed the brothers had colluded with Calone to prepare and execute the disclaimer and indemnity documents so they would be excused from paying Calone's exorbitant fees, which Mary Kay was forced to bear, and knowingly misled Mary Kay and Kay as to the legal effect of those documents. Smith declared he reasonably believed there was probable cause for the causes of action alleged in the original complaint. Smith further declared that the discovery produced in the case, including documents, responses to written discovery, and deposition testimony, did not diminish his opinion about the validity of Mary Kay's claims against Calone and the brothers, and the allegations in the proposed cross-complaint further confirmed his belief the brothers breached their fiduciary duties to Mary Kay.

Smith stated he never harbored any ill will towards the brothers; he did not know either of them personally and had never heard their names before Mary Kay contacted him. He filed the complaint against them based solely on the facts and evidence Mary Kay provided him, which supported the causes of action against them, and he intended only to seek relief for Mary Kay which would make her whole in light of the actions Calone and her brothers had taken against her, and not for any improper purpose.

Smith also explained why he dismissed Mary Kay's claims against her brothers. After Calone was dismissed, Smith researched and evaluated the costs, effects and

10.

potential benefits of continuing the litigation against the brothers, including whether it made economic sense for Mary Kay to continue with the claims against them. Smith concluded it did not because: (1) Mary Kay had already been made whole through Calone's waiver of his fees; (2) since Mary Kay's claims against her brothers arose out of her potential liability under the Indemnity Agreement, Calone's waiver of his fees negated her need to rescind the Indemnity Agreement to avoid those fees; and (3) Mary Kay sought to limit the continued cost of litigation. After evaluating these considerations, Smith believed that continuing the litigation was not economically feasible, and while Mary Kay incurred attorney fees and costs in the underlying action, it was not beneficial for her to incur additional litigation costs merely to recover them. It was in consideration of these financial interests that Mary Kay dismissed the remainder of her complaint 15 days after she dismissed the claims against Calone. Smith further explained that while the parties exchanged settlement communications both before and after the settlement with Calone, those communications were made in a good faith effort to reach an economical resolution of the parties' claims and were not made because Mary Kay's claims lacked merit.

Smith also explained why he would not stipulate to the filing of the brothers' cross-complaint: (1) he did not think there was any merit to the potential claims against Mary Kay; (2) it was a compulsory cross-complaint that should have been filed when the brothers first appeared in the case; and (3) it was not in Mary Kay's best interest to stipulate to a late, frivolous, cross-complaint that would increase her litigation costs.

In their opposition to the motion, the brothers submitted declarations from themselves; attorney McHugh; Charles and Kay's accountant Michael Schmidt; Raina M. Rochert, an associate with Calone's firm; attorney Lapcevic; Theresa M. LaVoie, a partner with the Ellis Law Group, who represented Calone in the underlying litigation and, together with Lapcevic (who is now an associate with the Ellis Law Group) represents the brothers in the present action; and Calone. The brothers also submitted

11.

numerous documents from the underlying litigation, including settlement offers and demands, discovery responses, and excerpts from the depositions of Mary Kay and Kay. The brothers argued their evidence showed Smith lacked probable cause to bring the underlying action, Smith initiated and continued prosecuting the underlying action with malice, and the underlying action terminated in favor of the brothers on the merits.

The trial court granted the motion. The trial court first ruled on the parties' evidentiary objections, sustaining one of the brothers' objections to Smith's evidence, and 11 of Smith's objections to the brothers' evidence, and overruling the others.[6] The trial court noted the parties agreed that Smith's representation of Mary Kay in the underlying action constituted protected activity such that the brothers must plead a prima facie case for malicious prosecution and produce admissible evidence showing a reasonable probability of success on the merits. The trial court found that the brothers did not show a probability of succeeding on the issue of whether Smith lacked probable cause to bring the two causes of action Mary Kay asserted against the brothers below, as neither party argued or introduced evidence concerning the objective tenability of the rescission cause of action based on mistake, and the brothers' proposed cross-complaint in the underlying action established the objective tenability of Mary Kay's breach of fiduciary duty claim.

## DISCUSSION

Resolving the merits of a special motion to strike requires "a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock*).) The

---

[6] The trial court ruled that declarations that a party made settlement demands on a given date were admissible to prove an action was still being prosecuted on that date, but the terms of the demands, as well as the written demands themselves, were inadmissible.

brothers do not contend that Smith did not make the threshold showing that the malicious prosecution action arose from protected activity.[7]  As a result, we consider only whether the brothers met their burden of demonstrating a probability of prevailing on their malicious prosecution claim against Smith.  (*Id.* at p. 699.)

"To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).)  To satisfy the plaintiff's burden, the plaintiff must "'state[] and substantiate [] a legally sufficient claim.'"  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738.)  The plaintiff must make a prima facie showing of facts that would, if proven, support a judgment in his or her favor.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)  For purposes of this inquiry, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant."  (*Ibid.*)  But "'the court does not weigh the evidence or make credibility determinations.'"  (*Ross, supra,* 145 Cal.App.4th at p. 197.)  The court must assume the truth of the evidence favorable to the plaintiff and consider the defendant's opposing evidence only to determine if it defeats the plaintiff's showing as a matter of law.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326; *Soukup*, *supra*, 39 Cal.4th at p. 291.)  Although the court does not weigh the evidence, "it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim."  (*Wilson, supra,* at p. 821.)

We review the trial court's decision de novo, engaging in the same process as the trial court to determine whether, as a matter of law, plaintiff established a probability of prevailing.  (*Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1270.)

---

[7] "It is settled that a claim for malicious prosecution is subject to a special motion to strike under section 425.16."  (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 197 (*Ross*).)

We review the trial court's ruling and not its rationale. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 80 (*Santa Monica*).)

The tort of malicious prosecution of a civil action has four elements: (1) the initiation of a prior civil proceeding; (2) a termination of that proceeding favorable to the party now bringing the malicious prosecution action; (3) a lack of probable cause in bringing the prior proceeding; and (4) malice. (*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 318; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 486, p. 712.) If any of these elements is missing, a malicious prosecution action fails as a matter of law. (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1813-1814.) The record shows the brothers could not show a probability of success because they are unable to establish that they obtained a favorable termination on the merits of the underlying action.

"In order for a termination of a lawsuit to be considered favorable with regard to a malicious prosecution claim, the termination must reflect on the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." (*Contemporary Services Corp. v. Staff Pro, Inc.* (2007) 152 Cal.App.4th 1043, 1056 (*Contemporary Services*).) "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort . . . [of malicious prosecution]." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150.) If the resolution of the underlying litigation "'"leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff."'" (*StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1400.) While it is not essential that the prior proceeding was favorably terminated following trial on the merits in order to maintain a malicious prosecution action, termination must *reflect* on the merits of the underlying action. (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.)

A favorable termination does not occur simply because a party has prevailed in an underlying action. (*Contemporary Services*, *supra,* 152 Cal.App.4th at p. 1056.) "'While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits – reflecting on neither innocence of nor responsibility for the alleged misconduct – the termination is not favorable in the sense that it would support a subsequent action for malicious prosecution.'" (*Ibid.*)

The voluntary dismissal of an action is commonly, but not always, a favorable termination for purposes of malicious prosecution law. (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335.) "'''A termination [by dismissal] is favorable when it reflects 'the opinion of someone, *either the trial court or the prosecuting party*, that the action lacked merit or if pursued would result in a decision in favor of the defendant.'" [Citation.] . . . [¶] . . . The focus is not on the malicious prosecution plaintiff's *opinion* of his *innocence,* but on the opinion of the dismissing party.' [Citation.] 'The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt.'''" (*Contemporary Services*, *supra*, 152 Cal.App.4th at pp. 1056-1057, some italics added; *Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 893.)

When the underlying action is voluntarily dismissed, "''"the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.'" [Citations.]' [Citation.] 'Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact.'" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).)[8]

---

[8] The brothers argue that a voluntary dismissal constitutes a prima facie showing of favorable termination sufficient to defeat an anti-SLAPP motion, citing *Sycamore Ridge* and *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97

Here, the brothers have not shown that the dismissal of Mary Kay's claims against them in the underlying action reflected their innocence of the misconduct alleged therein. The record instead demonstrates Mary Kay dismissed her claims for reasons unrelated to the substantive merits. In support of the anti-SLAPP motion, Smith submitted evidence he had confidence in the merits of the claims against the brothers in the underlying action, but he recommended that Mary Kay dismiss the brothers strictly for economic reasons. As a result of the settlement with Calone, Mary Kay was relieved of any obligation to pay for Calone's fees that arose from the preparation of the disclaimer and indemnity agreements, as well as the *Heggstad* petition. Since Mary Kay's claims against her brothers arose out of her potential liability under the Indemnity Agreement, Calone's waiver of his fee claim negated Mary Kay's need to rescind the agreement to avoid those fees. While Mary Kay could continue the action to try to recover the attorney fees she incurred in the underlying action, Smith determined it would not be beneficial for Mary Kay to incur additional litigation costs and fees to do so, particularly in light of Mary Kay's desire to limit the continued cost of litigation.

In our view, the voluntary dismissal of an underlying action does not reflect the merits when the undisputed evidence shows it was based on a sound financial decision. As the court explained in *Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 344-345 (*Oprian*): "It would be a sad day indeed if a litigant and his or her attorney

_____

(*Oviedo*). While the court in *Sycamore Ridge* did state that "a voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury" (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1400), the case does not stand for the proposition that the nature of a voluntary dismissal is always a jury question; instead, that depends on whether a conflict arises as to the circumstances of the termination. (*Id.* at p. 1399.) In *Oviedo*, while the court stated it was "possible to infer that the action was terminated favorably" to the plaintiff from the fact that the underlying action had been voluntarily dismissed without prejudice, the court further explained that there was other evidence to support the plaintiff's position, and the defendants' evidence that the action was not terminated in the plaintiff's favor merely raised a conflict as to the reasons behind the termination. (*Oviedo*, *supra*, 212 Cal.App.4th at pp. 112-113.)

could not dismiss an action to avoid further fees and costs, simply because they were fearful such a dismissal would result in a malicious prosecution action.  It is common knowledge that costs of litigation, such as attorney's fees, costs of expert witnesses, and other expenses, have become staggering.  The law favors the resolution of disputes. 'This policy would be ill-served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of a malicious prosecution action.'"  (See *Drummond v. Desmaris* (2009) 176 Cal.App.4th 439, 456-457 [distinguishing *Oprian* and finding trier of fact could reject vague declaration stating dismissal was for financial reasons "based upon its own contents and surrounding circumstances," including pro per status of declarant and appellate decision adversely affecting case].)

The brothers argue Smith's explanations are not credible.  Their arguments, however, are conjectural rather than evidentiary.

First, the brothers speculate the dismissal was not for economic reasons since the Calone settlement did not satisfy Mary Kay's litigation objectives of obtaining economic and non-economic damages that Mary Kay and Kay alleged were certain to exceed $500,000, as well as punitive damages, and of rescinding the Indemnity Agreement that obligated Mary Kay to indemnify Kay and the brothers from future liability apart from her obligation to pay for the *Heggstad* petition.  While the Indemnity Agreement covered more than the *Heggstad* petition, it is apparent that Mary Kay's primary litigation objective was to relieve herself of responsibility for paying Calone's fees arising from the petition.  The non-economic and punitive damages Mary Kay claimed resulted from Calone's enormous legal fees; once his fee claim was resolved, she no longer needed to rescind the Indemnity Agreement or seek damages for her physical and emotional distress.  Even when a case has merit a plaintiff may not be able to recover for all the damages she claims to have suffered and the defendant's conduct or financial status may not justify an award of punitive damages.  The recovery of such items from the brothers

17.

was questionable and foregoing a potential recovery, including a potential rescission of the Indemnity Agreement, in lieu of incurring additional attorney fees and costs does not signify a belief in the brothers' innocence.

The brothers also point to demands made after the settlement with Calone which they assert showed Mary Kay's litigation objectives consisted of more than being relieved of Calone's fees, and instead revealed her desire to obtain her brother's real property worth millions of dollars. The only evidence the brothers point to on this point, however, is Lapcevic's declaration, in which he states that when Kay's attorney, Zeff, told him about the settlement between Calone, Kay and Mary Kay, Zeff stated: the brothers would "now have to defend against their mother and sister's claims without the benefit of an insurance company picking up the costs"; Zeff and Smith would take the case to trial on Mary Kay's and Kay's behalf in an expeditious manner; should they prevail at trial, Mary Kay would end up owning all of the brothers' property; and Lapcevic needed to tell his clients that it would get very expensive for them if they did not come to their senses and reach a settlement. Zeff's statements, however, do not cast doubt on Smith's claim that Mary Kay had been made whole through Calone's waiver of his fees. Instead, they show the ultimate outcome of the litigation should Kay's claims succeed, namely that Kay would obtain the brothers' property through rescission of the disclaimer documents which she would then pass to Mary Kay on her death.

The brothers next assert that Mary Kay's litigation objectives were not satisfied because she continued her lawsuit against her brothers after she dismissed Calone. Smith, however, explained in his declaration in support of the anti-SLAPP motion that he delayed in dismissing the brothers because he was assessing the economic feasibility of continuing to litigate the claims against them. Smith's explanation is bolstered by his declaration filed in opposition to the brothers' motion for leave to file the cross-complaint, as well as his supplemental declaration on the anti-SLAPP motion, in which he stated that the attorneys for the Calone defendants offered to include in the dismissals

they created a dismissal of the entire action for Mary Kay as to all defendants, but later retracted the offer.[9] That Smith delayed in dismissing the brothers does not mean Smith ultimately dismissed them because he believed the case lacked merit. By dismissing the brothers a mere 15 days after Calone, Mary Kay was in the same situation she would have been in had she dismissed them at the same time she dismissed Calone.

We also disagree that the timing of the dismissal constitutes Mary Kay's implicit concession the underlying action lacked merit. The brothers assert that Mary Kay's primary desire in dismissing them was to thwart their "right to file their cross-complaint against her." Even if the brothers were dismissed in order to prevent the filing of a cross-complaint, that does not mean that Mary Kay or Smith lost confidence in her own claims; instead it affirms Smith's assertion that the brothers were dismissed to avoid further litigation costs. Moreover, the record shows, contrary to the brothers' representations, that their dismissal did not play a role in Smith's opposition to their motion for leave to file the cross-complaint or the trial court's denial of that motion. In opposing the motion, Smith argued Mary Kay would be prejudiced, not because she dismissed her brothers, but because she had dismissed Calone, who was the only party she could obtain indemnity from should her brothers' prevail on their claims in the cross-complaint. The trial court denied the motion, not because the brothers were dismissed, but because the motion was untimely, would prejudice Mary Kay in view of her dismissal of Calone, and the deposition transcripts filed with the motion did not provide a "sufficient basis" to permit the cross-complaint. The brothers assert that dismissal in the face of a threatened adverse event may constitute a favorable termination, citing *Citi-Wide Preferred Couriers, Inc. v.*

---

[9] Calone's attorney, LaVoie, declared that she offered to prepare separate requests for dismissals for Kay and Mary Kay, obtain counsel's signatures and file them with the court, and, as instructed by Zeff, both dismissals were with prejudice and dismissed only the claims against Calone. LaVoie does not contradict Smith's claim that Calone's attorney retracted the offer to include the brothers in the Calone release.

19.

*Golden Eagle Ins. Co.* (2004) 114 Cal.App.4th 906, 914-915 (*Citi-Wide*). Dismissing an action in the face of an untimely motion for leave to file a cross-complaint, however, is a far cry from what occurred in *Citi-Wide*, where the defendant in a malicious prosecution action abandoned its underlying lawsuit on the day of trial when it learned the plaintiff was going to contest the matter.

The brothers also argue doubt should be cast on Smith's explanation that the brothers were dismissed to avoid accumulating additional litigation costs because Mary Kay was not paying Smith's fees, which were being paid out of the Insurance Trust. Even if true, this is not inconsistent with Mary Kay's desire to limit the cost of litigation or to avoid incurring additional fees and costs.

Finally, the brothers assert that Smith's declaration is inadequate by itself to establish that Mary Kay dismissed her brothers for financial reasons only. They contend Smith was required to produce Mary Kay's declaration that evidences her opinion and rationale for dismissing them and, without such declaration, Smith's declaration at best creates a triable issue of fact. The cases they rely on, *Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808 and *Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 185, however, do not support this proposition; they merely state the general rule that "[i]f a conflict arises as to the circumstances explaining a failure to prosecute an action further, the determination of the reasons underlying a voluntary dismissal is a question of fact." (*Fuentes*, *supra*, 38 Cal.App.4th at p. 1808; *Weaver*, *supra*, 95 Cal.App.3d at p. 185, disapproved on other grounds in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882-883.) But as we have explained, there is no conflict as to the circumstances explaining Mary Kay's failure to prosecute the action further, as there is no evidence which supports an inference that the brothers were dismissed because Smith or Mary Kay did not believe the claims against them had merit. Certainly, there is no prima facie showing of facts demonstrating the brothers sustained a favorable termination on the merits.

As the brothers' evidence raised no question of fact for a jury on the favorable termination element of a malicious prosecution action, the trial court's ruling in Smith's favor on the anti-SLAPP motion was correct. Given this, we are not required to discuss the elements of lack of probable cause and malice.

Smith requests statutory attorney fees on appeal. (§ 425.16, subd. (c)(1).) It is established that when a party is entitled to attorney fees, they are available for services at trial and on appeal. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927.) Smith is the prevailing party on appeal, and thus is entitled to attorney fees. Accordingly, we will remand the matter to the trial court for it to determine Smith's fees. (*Security Pacific National Bank v. Adamo* (1983) 142 Cal.App.3d 492, 498 ["Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees when it determines costs on appeal."].)

## DISPOSITION

The judgment is affirmed and the matter remanded to the trial court for its determination of an attorney fees award to Smith for the appeal. Smith is also entitled to costs on appeal.

_____
GOMES, J.

WE CONCUR:

_____
HILL, P.J.

_____
SMITH, J.

21.