Filed 4/30/20

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LORETTA GRUBER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANDRA GRUBER et al.,<br><br>    Defendants and Appellants. | B294617<br><br>(Los Angeles County<br>Super. Ct. No. BC708186) |

    APPEAL from an order of the Los Angeles Superior Court, Randolph M. Hammock, Judge. Affirmed.

    Schumann Rosenberg, Eric Arevalo, Jeffrey P. Cunningham, and Marlys K. Braun for Defendants and Appellants Sandra Gruber and Kenneth Gruber.

    Prindle Goetz Barnes & Reinholtz, Jack R. Reinholtz, Gopal S. Patel, and Lauren S. Gafa for Defendant and Appellant Continental Precision Stamping, Inc.

---

\*    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II.B. of the Discussion.

Defendant and Appellant Bradford Gruber, in pro. per.

Tesser Grossman, Brian M. Grossman, and Gina M. Simas for Plaintiff and Respondent Loretta Gruber.

\* \* \* \* \* \*

The anti-SLAPP statute empowers a trial court to dismiss a claim if the claim (1) falls within the statute's scope and (2) lacks "'minimal merit,'" which is assessed by "accept[ing] the plaintiff's evidence as true." (Code Civ. Proc., § 425.16; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 385 (*Baral*).)[1] When a plaintiff sues for malicious prosecution, she must demonstrate, among other things, that she was previously sued "without probable cause." (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740 (*Siebel*).) Although the question whether there was probable cause to sue is "a question of law to be determined by the court," that question is necessarily evaluated by reference to "the facts known to the" party who previously brought suit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875, 878 (*Sheldon*).) Where, as here, there is a dispute over what facts the previously suing parties knew at the time they brought suit, a trial court faced with an anti-SLAPP motion by those parties must decide whether the malicious prosecution plaintiff has shown that her allegation that those parties lacked probable cause has "minimal merit." How is this to be done? We hold that a trial court should do so by (1) resolving all factual disputes regarding what the previously suing parties knew by accepting the plaintiff's evidence as true

---

[1] "SLAPP" is short for a "Strategic Lawsuit Against Public Participation."

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

and (2) through that lens, evaluating whether the prior claim(s) were legally and factually tenable. Applying this holding, we conclude that the plaintiff here has proven that her malicious prosecution claim has minimal merit and that the trial court acted properly in denying the anti-SLAPP motions to dismiss that claim.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Marriage and relationship with in-laws*

Bradford Gruber (Bradford) and Loretta Gruber (Loretta) married in July 1997, Loretta filed for dissolution in June 2015, and judgment was entered in April 2018.[2]

Throughout his life, Bradford has been close with—and dependent upon—his parents, Sandra Gruber (Sandra) and Kenneth Gruber (collectively, the parents). Bradford draws a salary by working for the parents' company, Continental Precision Stamping, Inc. (Continental). When a tree fell on their family's home in 2002, Bradford and Loretta moved their family into the parents' then-unoccupied home on Sunset Boulevard in the Brentwood Heights neighborhood of Los Angeles. And after his separation from Loretta, Bradford moved back in with his parents rent-free and used one of their other, empty houses to store his belongings rent-free.

---

[2] Because many of the parties have the same surname, we use first names for clarity. We mean no disrespect.

**B.    *Transfers of money and services***

While Bradford and Loretta were married, the parents gave Bradford and his family $751,278.80 in money or services that can be grouped into four categories.

1.    *Use of the Sunset Boulevard home*

a.    The first, four-month "lease"

Immediately after Bradford and Loretta moved into the Sunset Boulevard home in September 2002, Bradford signed a four-month lease with one of Sandra's companies called Creative Concepts.  The lease set forth a monthly rent of $7,500.  Although Bradford wrote four checks for $7,500, the parents never cashed those checks.  Bradford nevertheless presented the lease and checks to his homeowner's insurance company to obtain payments for living expenses.  Their deceit worked, as the insurance company cut checks for $18,000, which Bradford then gave to Sandra.

b.    The second, month-to-month "lease"

After the first lease expired in January 2003, Bradford signed a second, open-ended, month-to-month lease directly with Sandra.  The lease set forth a monthly rent of $2,500.  Loretta wrote three checks for the first three months, but the checks were for $7,500—not $2,500.  Once again, Sandra never cashed those checks.  Bradford and Loretta nevertheless listed $2,500 as their monthly rent expense in applications to obtain financial aid from their daughter's private school.

c.    Total "owed" under both leases

The parents calculated the amount of unpaid rent under these "leases" as $364,500.

### 2. *Promissory notes to Continental*

Between June 2008 and August 2015, Continental gave Bradford a total of $341,078.80 in cash pursuant to 53 individual, zero-interest promissory notes executed by Bradford alone. The content of the 53 notes is identical; curiously, some of them contain the same error regarding a nonexistent date (September 31) despite purporting to be executed a year apart. Bradford agreed to repay the notes by having $100 per week deducted from his salary. The salary deductions totaled $13,700, such that Bradford continued to owe $327,378.80 on the promissory notes to Continental.

### 3. *Loans from Sandra*

In April 2011, Sandra gave Bradford four payments totaling $20,875. Each payment was memorialized by a written "promise to pay," although Bradford only signed three of the four promises.

### 4. *Other payments by the parents*

On unspecified dates while Bradford and Loretta were still married, the parents paid $24,825 in "construction-related fees" to Bradford and unspecified "third parties" "on behalf of Bradford and Loretta toward completion of construction" of their tree-crushed home.

## C. **The 2016 lawsuit**

### 1. *The complaint*

In May 2016, which was less than a year after Loretta filed for dissolution, the parents and their company (Continental) sued Bradford and Loretta for $751,278.80 in unpaid debt as well as for punitive damages (the 2016 Lawsuit). More specifically, they brought (1) five claims—that is, three breach-of-contract claims and two money-lent claims—to recover the debts outlined above,

and (2) two claims for fraud. The fraud claims allege that Bradford and Loretta engaged in promissory fraud by "express[ly]" "represent[ing]" and "expressly assur[ing]" the parents that they "would begin to re-pay the debt[s] within a reasonable time[] once they had the financial ability to do so," while harboring a "secret intention" never to repay those debts.

### 2. *Prosecution of the lawsuit*

Against Loretta, the parents propounded 22 requests for production, 71 requests for admission, and 54 requests to admit the genuineness of documents; they also deposed her. Against Bradford, they propounded no discovery whatsoever and did not depose him.

### 3. *Resolution of the lawsuit*

On June 6, 2017, Bradford executed a Stipulation for Judgment. In that stipulation, Bradford "acknowledge[d]" that he and Loretta "owed" the parents $751,278.80 as a "joint debt," and agreed to pay the parents $380,000 of that amount.

Five days before Bradford executed the stipulation, his lawyer had sent Loretta's lawyer a copy of the proposed stipulation as well as a letter asserting (1) Bradford's "intent to sign" the stipulation and to acknowledge $380,000 as a "community debt," and (2) Bradford's further intent to hold Loretta liable for half of that debt "in the parties' [pending] dissolution action."

The same date that the trial court entered the stipulation, the parents and their company dismissed Loretta from the lawsuit without prejudice.

As noted above, during the entire pendency of the 2016 Lawsuit, Bradford was living with his parents rent-free.

6

## II.    Procedural Background

### A.    *Complaint*

In May 2018, Loretta sued Bradford, his parents and Continental for malicious prosecution of the 2016 Lawsuit.[3]  More specifically, Loretta alleged that the parents and Continental initiated the 2016 Lawsuit "without probable cause," that they "acted maliciously" in filing suit to "mis-characterize hundreds of thousands of dollars in gifts as loans" in order to exact "vengeance against Loretta for filing for divorce," and that she was "damaged" by the suit.  Loretta sought compensatory as well as punitive damages.

### B.    *Anti-SLAPP motions*

In August 2018, the parents, Continental and Bradford each filed separate motions to dismiss Loretta's complaint under the anti-SLAPP statute.  The parents' and Continental's separately filed motions as well as the accompanying declarations and exhibits were nearly identical.  Loretta filed a consolidated opposition to the motions filed by the parents and Continental and a separate opposition to the motion filed by Bradford.  The parents and Continental each filed separate replies and further declarations with exhibits.  The parents and Continental also filed identical evidentiary objections.

In a comprehensive 23-page tentative ruling that the trial court later adopted as its final ruling, the court denied the anti-SLAPP motions.  The court ruled that Loretta's malicious prosecution lawsuit arose from "protected activity" within the

---

[3]     Loretta also sued the lead attorney and law firm who represented the parents and Continental in the 2016 Lawsuit, but the trial court dismissed those defendants under the anti-SLAPP statute and Loretta has not appealed that ruling.

7

reach of the anti-SLAPP statute, but found that Loretta had established that her malicious prosecution claim had "minimal merit" because she had adduced sufficient evidence to establish that (1) the parents and Continental—the plaintiffs in the 2016 Lawsuit—had initiated that lawsuit without probable cause and with malice, and (2) Bradford, although not a plaintiff in the 2016 Lawsuit, had nevertheless conspired with his parents to prosecute and settle that case.

### C.    *Appeal*

The parents, Continental and Bradford filed timely appeals.

## DISCUSSION

The parents, Continental and Bradford argue that the trial court erred in denying their anti-SLAPP motions because, in their view, Loretta did not show that her malicious prosecution claim had "minimal merit."[4]

## I.    The Law, Generally

### A.    *The anti-SLAPP statute*

The anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from" activity that is protected by the law.  (*Baral*, *supra*, 1 Cal.5th at p. 384.) "Accordingly, a trial court tasked with ruling on an anti-SLAPP

---

4    We decline to review the propriety of the trial court's ruling that Bradford was a proper defendant in Loretta's malicious prosecution suit because (1) Bradford's briefs on appeal consist of one-paragraph, blanket joinders to his parents' opening and reply briefs, and (2) the briefs Bradford joined do not address the propriety of Bradford as a proper defendant.  Because Bradford has offered no "'legal argument'" on this point, we can and do treat this issue as waived.  (*People v. Stanley* (1995) 10 Cal.4th 764, 794.)

motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [she] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887 (*Abir*).) A claim has "minimal merit" if it is "'both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment *if the evidence submitted by the [nonmoving party] is credited.*' [Citation.]" (*Wilson v. Parker, Covert & Chidster* (2002) 28 Cal.4th 811, 821 (*Wilson*), italics added, superseded on other grounds by § 425.16, subd. (b)(3); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 (*HMS Capital*).) Indeed, a court "evaluate[s] the [moving party's] evidence only to determine if it has defeated that submitted by the [nonmoving party] as a matter of law." (*Soukup*, at p. 269, fn. 3.) Because a court is to accept the nonmoving party's evidence as true, the court is not to "'weigh the credibility or comparative probative strength of competing evidence.'" (*Id.* at p. 291.) We independently evaluate a trial court's anti-SLAPP analysis. (*Id.* at p. 269, fn. 3.)

**B.** *The tort of malicious prosecution*

To prevail on a claim for malicious prosecution, a plaintiff must establish that (1) the defendant initiated or maintained a prior action "without probable cause," (2) the defendant acted with "malice" in doing so, and (3) the prior action was terminated in the plaintiff's favor on the merits. (*Siebel*, *supra*, 41 Cal.4th at p. 740; *Sheldon*, *supra*, 47 Cal.3d at p. 874.) If the plaintiff seeks

9

to recover monetary relief, she "must also prove [(4)] damages." (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1411 (*Sycamore Ridge*).)

The probable cause element is evaluated "objectively" by asking "whether any reasonable attorney would have thought the claim [legally and factually] tenable." (*Sheldon, supra*, 47 Cal.3d at p. 886; *Wilson, supra*, 28 Cal.4th at p. 817.) A prior action was not initiated without probable cause merely because it was ultimately found to lack merit; it was initiated without probable cause only if "*all* reasonable lawyers" would "agree" that the suit, at the time of filing, was "totally and completely without merit." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 743, fn. 13 (*Jarrow*).) This objective assessment is necessarily made using "the facts known to the defendant" "at the time the suit was filed." (*Sheldon*, at p. 878; *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449; *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 594 [tenability "depends upon" "the state of the facts" "as well as" "the state of the law"].) Although the objective question of tenability is always a "question of law" for the court to decide (*Sheldon*, at pp. 875, 878; *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 453 (*Drummond*)), the question of what facts were known at the time of filing is a "question of fact" which, if disputed, is for the jury to decide and, critically, to decide *before* the court makes its objective determination of tenability. (*Medley Capital Corp. v. Security National Guaranty, Inc.* (2017) 17 Cal.App.5th 33, 48; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 496, fn. 25 (*Downey Venture*); *Ross v. Kish* (2006) 145 Cal.App.4th 188, 202; *Sheldon*, at p. 881.)

The malice element looks to the "subjective intent or purpose with which the defendant acted in initiating the prior

10

action" (*Sheldon*, *supra*, 47 Cal.3d at p. 874), and is therefore a "question of fact" (*Drummond*, *supra*, 176 Cal.App.4th at p. 452). A party acts with "malice" when it files suit due to "ill will or some improper ulterior motive.'" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 224 (*Daniels*), italics omitted; *Drummond*, at p. 451.) Malice requires more than proof that the party acted without probable cause. (*Downey Venture*, *supra*, 66 Cal.App.4th at p. 498.)

The prior termination element examines (1) whether the prior action was terminated in the malicious prosecution plaintiff's favor, and (2) whether that termination "reflect[s] . . . the plaintiff's innocence of the misconduct alleged" in the prior action. (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056; *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.) Where, as here, the previously suing parties voluntarily dismissed the malicious prosecution plaintiff without prejudice, the dismissal is presumed to reflect the plaintiff's innocence. (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1400 ["A voluntary dismissal is presumed to be a favorable termination on the merits."]; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1540; *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 462.) This presumption is rebuttable, but whether it has been rebutted is a question of fact. (*Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808.)

## II.    Analysis

It is undisputed that Loretta's claim for malicious prosecution falls within the ambit of the anti-SLAPP statute because the statute applies to claims that "arise[] from" "any written . . . statement . . . made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subds.

11

(b)(1), (e)) and, as noted above, a malicious prosecution claim is predicated on the filing of a prior lawsuit. (*Jarrow*, *supra*, 31 Cal.4th at pp. 734-735 [so holding].) Consequently, the propriety of the trial court's order denying the anti-SLAPP motions in this case depends solely on whether Loretta proved that her malicious prosecution claim had minimal merit. We now turn to the elements of her malicious prosecution claim.

### A. *Lack of probable cause*

Because "'a malicious prosecution suit may be maintained'" if *any one* of "'several claims in the prior action lacked probable cause'" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686 (*Crowley*)), we—like the trial court—focus on whether Loretta has established that the parents (for themselves and as the individuals running Continental) lacked probable cause to support their promissory fraud claims.

The threshold question is: How do we do this?

We are not deciding *the merits* of Loretta's malicious prosecution claim, which, as noted above, would have required us (1) to resolve any factual disputes regarding what the parents knew at the time they filed the 2016 Lawsuit, and (2) to ask whether all reasonable attorneys would conclude that the promissory fraud claims were "'totally and completely without merit'" based on the facts as we resolved them. (*Jarrow*, *supra*, 31 Cal.4th at pp. 739, 743, fn. 13; *Sheldon*, *supra*, 47 Cal.3d at pp. 881, 878, 886.) Instead, we are merely deciding whether Loretta has shown that her malicious prosecution claim has "minimal merit" to withstand an anti-SLAPP motion. *That* inquiry, as noted above, requires us (1) to accept Loretta's evidence as true (*Soukup*, *supra*, 39 Cal.4th at p. 291; *Wilson*, *supra*, 28 Cal.4th at p. 821; *HMS Capital*, *supra*, 118 Cal.App.4th

at p. 212), and (2) to ask whether, on the basis of that evidence, Loretta has made a "prima facie showing" that all reasonable attorneys would conclude that the promissory fraud claims were "totally and completely without merit."

We reject the different modes of analysis urged by the parties. Loretta suggests that we must resolve the factual disputes regarding what the parents knew, but this suggestion oversteps the more limited role of an anti-SLAPP motion to "weed[] out" or ""screen"" claims (*Baral, supra*, 1 Cal.5th at p. 384; *Jarrow, supra*, 31 Cal.4th at p. 739), not to definitively resolve them. The parents argue that the existence of factual disputes over what they knew at the time they filed the 2016 Lawsuit means that they had probable cause, ostensibly because a "reasonable attorney" would have chosen to rely upon the subset of disputed facts that supported the existence of probable cause. Probable cause is lacking, the parents continue, only if the undisputed facts show a "'complete absence of . . . evidence'" to support their claims. But this argument effectively nullifies a critical aspect of the anti-SLAPP analysis—namely, the requirement that courts accept the *nonmoving party's* evidence as true. Indeed, this argument effectively urges us to apply the *converse* of that requirement by accepting the *moving party's* evidence as true unless the moving party has no evidence at all.

The next question is: When the factual disputes regarding what the parents knew when they filed the 2016 Lawsuit are resolved in Loretta's favor, do these facts constitute a "prima facie showing" that the parents lacked probable cause to file their claims for promissory fraud?

As a "'subspecies of fraud and deceit'" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973),

13

promissory fraud requires proof of "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453 (*Behnke*).)

The facts are disputed over whether Loretta, as alleged in the 2016 Lawsuit, ever "express[ly]" "represent[ed]" or "assur[ed]" the parents that she would pay the rent due under the two leases, the promissory notes Bradford executed to Continental, the promises to pay Bradford made to Sandra, or the money the parents paid to Bradford or others for construction-related costs. The parents insist Loretta did. Loretta insists she did not, and goes further in stating that she was "completely unaware" of the second lease and the promissory notes Bradford executed to Continental. Loretta's claim of ignorance is partially corroborated by Sandra herself, who testified in her deposition that she never gave Loretta copies of the promissory notes and had "no idea" if she knew about them. If we accept Loretta's evidence as true (which, as noted above, we must), then Loretta made no such promise, and the first element of a promissory fraud claim is missing (*Behnke*, *supra*, 196 Cal.App.4th at p. 1453), and this constitutes a prima facie showing that the parents accordingly lacked probable cause to bring that claim. (*Jarrow*, *supra*, 31 Cal.4th at p. 742 [probable cause is lacking where there is "'no competent evidence'" to support an element of a claim]; *Wilson*, *supra*, 28 Cal.4th at p. 822 [same]; *Cole v.*

14

*Patricia A. Meyer & Associates* (2012) 206 Cal.App.4th 1095, 1113 [same].)

The parents respond with what boil down to three arguments.

First, they point to evidence that, in their view, impeaches Loretta's denial of promising to repay the parents for the various debts. To begin, we must decline the parents' invitation to evaluate the credibility or weight of Loretta's evidence, as we must accept the nonmoving party's evidence as true. (*Abir*, *supra*, 40 Cal.App.5th at p. 889 ["Because [a] plaintiff['s] evidence must be credited, a court is not to make credibility determinations or otherwise weigh the evidence submitted."].) The evidence cited by the parents does not in any event undermine Loretta's denial of making any promise. They point to Loretta's signature on three checks for rent and an email she sent asking a Continental employee to let her know how much "family debt" to list on their daughter's "financial aid" application. But, as noted above, it is undisputed that the parents never cashed any rent checks; more to the point, Loretta and Bradford reported these amounts to an insurance company and private school to obtain benefits.[5] Loretta's willingness to make a gift look like a

---

[5] The parents objected to the admissibility of Loretta's statement that Bradford wanted her to fill out rent checks to present to the insurance company to obtain benefits, and they renew that objection on appeal. The trial court overruled the objection, and we conclude that the trial court did not abuse its discretion in doing so because Bradford's statement is relevant to prove the absence of a true debt and, while hearsay, the statement is of a party opponent (Evid. Code, § 1220) as well as the statement of a co-conspirator made in the course of

15

debt does not turn that gift into a debt and does not in any event amount to an "express" representation or assurance of repayment. The parents also point to a statement Loretta allegedly made to a Continental employee that she and Bradford "owed [the parents] so much money." Even if we consider this statement, then at most the statement conflicts with the evidence Loretta submitted in opposition to the anti-SLAPP motion; further, the statement does not speak to whether Loretta ever made an "express" representation or assurance of repayment to the parents—and *that* is the issue upon which the parents' promissory fraud claim turns. In sum, none of this evidence defeats Loretta's showing as a matter of law.

Second, the parents recite the general maxim that malicious prosecution claims are disfavored, such that any doubts should be resolved in favor of dismissing Loretta's malicious prosecution claim. Although "malicious prosecution is a 'disfavored cause of action,'" this maxim means that the tort "should not be expanded." (*Crowley*, *supra*, 8 Cal.4th at p. 680.) The maxim "'should not be employed to defeat a legitimate [claim]'" for malicious prosecution. (*Ibid.*, quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53.) Because, as we conclude in this opinion, Loretta has satisfied her burden of showing under the anti-SLAPP statute that her malicious

---

Bradford's, Loretta's, and the parents' conspiracy to defraud the insurance company (*id.*, § 1223). (*People v. Powell* (2018) 5 Cal.5th 921, 961 [abuse of discretion review].) We have no occasion to review the parents' renewal of three other evidentiary objections because our analysis does not rely on that other evidence.

16

prosecution claim has "minimal merit," her claim is a "legitimate" one that should be permitted to move forward.

Lastly, the parents argue that the trial court impermissibly relied on statements made by the family court in Bradford's and Loretta's dissolution proceeding regarding the 2016 Lawsuit. Because we independently review a trial court's resolution of an anti-SLAPP motion, we review only its result, not its reasoning. (See *Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1020, fn. 5.) Because *our* analysis does not rely on anything the family court said, we need not examine the propriety of the trial court's doing so.

### B.    *Remaining elements*

#### 1.    *Malice*

Accepting Loretta's evidence as true, Loretta made a "'prima facie showing'" that the parents acted with malice. (*Wilson*, *supra*, 28 Cal.4th at p. 821.) That evidence supports a finding that Bradford is very close with—and, seemingly, largely dependent upon—his parents: They have been his employer, his landlord, and his financier for years and years. The evidence also supports a finding that Bradford and his parents coordinated their actions vis-à-vis the 2016 Lawsuit: The parents filed suit; Bradford, through his sister, looked to his parents' attorneys for references for counsel to defend him in the very same lawsuit; the parents did not depose Bradford or propound any discovery on him; and Bradford signed a stipulated judgment that capitulated to the lawsuit and thereby purported to establish a $380,000 community debt. And the evidence supports a finding that Bradford did this in order to saddle Loretta with half of that debt: Bradford said as much in his pre-stipulation letter to Loretta. From this, a jury could infer that the parents filed their lawsuit

17

with "ill will" toward Loretta for divorcing their son or with the "improper ulterior motive" of seeking to alter the distribution of assets and debts in their son's pending dissolution action. Either qualifies as malice. (*Daniels*, 182 Cal.App.4th at p. 224.)

The parents muster three arguments in response. First, they assert that Loretta offered no direct evidence of their malice. This is of no moment because "parties rarely *admit* an improper motive"; that is why "malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital*, *supra*, 118 Cal.App.4th at p. 218, italics added.) Second, the parents proffer alternative, innocent motivations for their lawsuit—namely, that (1) they had no reason to sue Bradford and Loretta until the family court ordered the sale of their prior home, which would finally generate a pot of money from which the parents could collect their debts, (2) they had no reason to depose or seek discovery against Bradford because Bradford "did not dispute the existence of the community debts," and (3) they had no reason to "concoct[] false community debts" when Loretta had admitted to a Continental employee that she owed the parents money. This conflicting evidence is of no moment because, as noted above, we must accept *Loretta's* evidence as true and this evidence does not otherwise defeat Loretta's showing as a matter of law. Third, the parents argue that there was no malice "as a matter of law" because Bradford's accumulation of debt to the parents all occurred while he was married to Loretta, because he used that debt to pay community expenses, and because he acknowledged that debt in the stipulation, such that Family Code sections 910 and 914 dictate that such debt belongs to the community. This is of no moment because it speaks only to the parents' reasons for filing their

18

contract-based claims, not their fraud claims. What is more, Loretta was not a party to the stipulation and Bradford executed it knowing Loretta "dispute[d] th[e] debt" and did so in order to "seek to hold Loretta liable for said debt in the parties' dissolution action."

### 2. *Favorable termination*

As noted above, the parents' voluntary dismissal of Loretta is presumptively a favorable termination that reflects her innocence of the allegations in the 2016 Lawsuit and thus satisfies this element of Loretta's malicious prosecution claim. (E.g., *Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1400.) To be sure, the parents offered a contrary explanation for the dismissal—namely, that continuing the 2016 Lawsuit against her would have been taxing on the parents' finances and health. But this explanation creates, at best, a conflict in the evidence that we must for anti-SLAPP purposes resolve in Loretta's favor. The explanation does not dictate a ruling in the parents' favor as a matter of law. Further, the fact that the parents settled the 2016 Lawsuit *with Bradford* does not somehow alter or otherwise rebut the presumption that the subsequent voluntary dismissal *of Loretta* was a favorable termination on the merits, especially as to the fraud claims against her that were in no way implicated by the settlement.

### 3. *Damages*

Although damages are an element of a malicious prosecution claim where, as here, the plaintiff is seeking monetary relief (*Sycamore Ridge*, supra, 157 Cal.App.4th at p. 1411), "there is no requirement that, for purposes of surviving an anti-SLAPP motion, a malicious prosecution plaintiff must provide specific evidence of the extent of the damages suffered"

19

(*id.*, at pp. 1411-1412).  Loretta has made a "prima facie showing" that she was damaged because she declared that she "incurred approximately $50,000 in [attorney] fees and costs defending against" the 2016 Lawsuit.  In response, the parents argue that (1) she did not allege that amount in her malicious prosecution complaint, and (2) her declaration was "a mere conclusion with no facts" because it did not identify the attorney(s) she hired, document their billing and rates, or attach any proof of payment.  We reject both arguments.  We reject the first argument because a court in evaluating the minimal merit of a claim is to look at— not, as the parents suggest, to ignore—the evidence later submitted to support that claim.  (§ 425.16, subd. (b)(2); *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 [looking to the "prima facie factual showing" made by the plaintiff].)  We reject the second argument because *Sycamore Ridge* disclaims the need for a detailed accounting of damages and because the parents offer no authority in support of their assertion that such an accounting is necessary to withstand an anti-SLAPP motion.

## DISPOSITION

The order is affirmed.  Loretta is entitled to her costs on appeal.

## CERTIFIED FOR PARTIAL PUBLICATION.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

21